COMMONWEALTH of Pennsylvania, Appellee

v.

Benjamin Clayton JOHNSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 28, 2004.

Filed April 4, 2005.

Reargument Denied June 9, 2005.

Kirk J. Henderson, Pittsburgh, for appellant.

Francesco L. Nepa, Assistant District Attorney and Michael W. Streily, Deputy District Attorney, Pittsburgh, Commonwealth, appellee.

Before: MUSMANNO, LALLY-GREEN and McCAFFERY, JJ.

OPINION BY MUSMANNO, J.

¶1 Benjamin Clayton Johnson ("Johnson") appeals from the judgment of sentence entered following his convictions of attempted murder, aggravated assault, carrying a firearm without a license, recklessly endangering another person and resisting arrest.[1] We affirm.

¶2 The trial court summarized the facts of this case as follows:

[Johnson] was a former employee of the City of Clairton, who had been terminated from his employment with the City. On April 29, 2000, [Johnson] encountered Dominic Serapiglia, the Mayor of Clairton, in a coffee shop. [Johnson], who was upset at the time, told the Mayor that he was "going to shoot him," as well as members of City Council, the Police Chief, the Public Works Director, and the City Manager; listing each by name. The Mayor reported the confrontation to Sgt. DeMaio of the Clairton Police and, ultimately, charges were filed against [Johnson].

Frank Geletko, the Public Works Director for Clairton, testified that, a few days after the coffee shop incident, he saw [Johnson] circling the building where he worked and, as [Johnson] drove by, he made a hand motion towards the witness simulating the pointing and firing of a gun. On that same day, the witness was in his vehicle when he encountered [Johnson] standing in an alley. [Johnson] mumbled something and made the same gesture. The witness reported the incidents to the Clairton Police.

Michael Mursch, who was [Johnson's] co-worker in the Clairton Public Works Department, testified that on April 5, 1998. [Johnson] pulled out a gun and pointed it at him and cocked the trigger. The incident resulted in [Johnson's] employment termination. The witness also testified that, around the time of the threat made to Mayor Serapiglia and the gestures made to Mr. Geletko, [Johnson] rode past him in a vehicle at a slow pace, made a similar gesture and said, "Bang" "Bang." The witness filed a report with the police.

On May 3, 2000, a warrant was issued for [Johnson's] arrest for crimes of Terroristic Threats. On that same date, the Clairton Police, including Sgt. DeMaio and Officer [John] Dunlap, accompanied by the Allegheny County Police, went to the home of [Johnson's] mother to place him under arrest. For their safety, the police formulated a plan to get [Johnson] to exit the home and to have him arrested outside of the home. During the arrest, which took place outside of the home, [Johnson] struggled with Sgt. DeMaio. During the struggle, Officer [ ] Dunlap observed a firearm in [Johnson's] waistband. Officer Dunlap drew his weapon and pointed it at [Johnson] who attempted to kick the weapon out of the officer's hand. Fearing an accidental discharge of the firearm, Officer Dunlap reholstered his weapon. [Johnson] was subdued, hand-cuffed, and taken to the Clairton Police Station where the weapon was retrieved from his person. [Johnson] was released on bond.

On October 19, 2000, Officer Dunlap, while on patrol in a marked vehicle, was speaking to Officer David Hart who was

---

**1.** 18 Pa.C.S.A. §§ 901, 2702(a)(2), 6106, 2705, and 5104.

on foot patrol. While the two were speaking, an individual rode past them on a bicycle and stated words to the effect, "Kill" or "Killer Dunlap." Officer Dunlap attempted to follow the individual in his patrol car and encountered [Johnson,] who was on a bicycle. [Johnson] began to yell profanities at the officer and rode away on the bicycle. The officer decided to cite [Johnson] and began to follow him. After failing to get [Johnson] to stop the bicycle, the officer pulled ahead of the bicycle, stopped and began to exit his vehicle.

Upon exiting his vehicle, Officer Dunlap felt several impacts upon his body and turned to the rear of his vehicle to see [Johnson,] who was approximately three (3) feet away, shooting at him. The officer then went to the front of his vehicle to obtain cover. [Johnson] pursued the officer and continued to fire at the officer, striking him in the back. The officer[,] observing children nearby and fearing for their safety and concerned that, if he continued to run, he may not survive the assault, turned towards [Johnson] and attempted to grab him. As Officer Dunlap struggled with [Johnson], he felt another impact on his shoulder but was able to get [Johnson] to the ground. At that point, another individual came to the officer's aid. Soon thereafter, [Johnson] was subdued, arrested, and the gun recovered. Officer Dunlap asked [Johnson] why he had shot him and [Johnson] responded, "[B]ecause you dropped a hammer on me with DeMaio."

Officer Dunlap had been shot in the abdomen, the right hand and left shoulder. He was life-flighted to a trauma unit where he underwent multiple surgeries. At the time of trial, he had received two (2) surgeries on his right hand, surgeries for two (2) torn disks in his back, and was returned to the emergency room numerous times for infections and other complications, resulting from the shooting. As of the trial date, Officer Dunlap was still undergoing treatment for continuing disabilities.

After the shooting and arrest of [Johnson], a search was conducted of his home. As a result of the search, among other things, the following items were located: an assault rifle and ammunition found under [Johnson's] bed; a .38 caliber revolver found under [Johnson's] bed; a pellet pistol found on a dresser; [and] a magazine for a Glock .45 handgun. The police also recovered a notebook in the dresser drawer of [Johnson's] bedroom with the following notations:

> "Isaiah, 54:17. 'But in that coming day, no weapon turned against you shall succeed, and you will have justice against every [courtroom lie]. This is the heritage of the servants of the Lord. This is the blessing I have given you.' Says the Lord."

and

> No. 1 "S.O.C." No. 2 "coffee shop." No. 3, "magistrate." And No. 4, "police force-render ineffective."

[Johnson's] name was also contained in the notebook.

Trial Court Opinion, 12/4/03, at 2–5 (citations omitted).

¶ 3 On October 4, 2002, a jury convicted Johnson of the above-listed crimes. On March 31, 2003, the trial court sentenced Johnson to serve a prison term of twenty to forty years for the attempted murder conviction and a consecutive prison term of six to twelve years for the aggravated assault conviction. This timely appeal followed.

¶ 4 Johnson presents the following issues for our review:

I. May the lower court violate [Johnson's] state and federal constitutional protections against double jeopardy by imposing consecutive sentences for aggravated assault and attempted murder when they were based upon one act and when this Court and the Supreme Court have said that these charges must merge?

II. Did the admission of irrelevant and prejudicial weaponry unrelated to the shooting and prejudicial journal entries seized from [Johnson's] bedroom deprive him of a fair trial?

III(A). May the Commonwealth deprive [Johnson] of a fair trial by urging the jury to "get mad" at him as it deliberates and, thus, base its verdict on emotion rather than reason?

III(B). Is it plain error for the Commonwealth to ask the jury to "get mad" at [Johnson] and may this plain error be reviewed on direct appeal?

III(C). Was counsel ineffective for failing to object when the Commonwealth urged the jury to "get mad" at [Johnson]?

III(D). Can this ineffectiveness issue be raised on direct appeal especially when the lower court addressed the issue in its opinion and the ineffectiveness is apparent on the record?

Brief for Appellant at 6.

■ ¶ 5 Johnson first argues that the convictions of attempted murder and aggravated assault should have merged for sentencing purposes. Johnson contends that case law has held that aggravated assault is a lesser-included offense of attempted murder and therefore the crimes merge for the purposes of sentencing.

■ ¶ 6 A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. *Commonwealth v. Duffy,* 832 A.2d 1132,

1137 (Pa.Super.2003). Accordingly, our standard of review is plenary. *Id.*

¶ 7 In *Commonwealth v. Gatling,* 570 Pa. 34, 807 A.2d 890 (2002) (plurality), our Supreme Court clarified the appropriate analysis for determining when convictions should merge for the purposes of sentencing:

> The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts. If the crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

*Id.* at 899 (footnote omitted).

■ ¶ 8 To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. *Commonwealth v. Anderson,* 538 Pa. 574, 650 A.2d 20, 24 (1994). If both crimes require proof of at least one element that the other does not, then the sentences do not merge. *Id.*

¶ 9 Here, because the convictions were based on the same facts, *i.e.,* the repeated shooting of Officer Dunlap, we must determine whether the offenses of attempted murder and aggravated assault, 18 Pa.

C.S.A. § 2701(a)(2), are greater and lesser-included offenses.[2]

¶ 10 Attempted murder is defined by reading the attempt statute, 18 Pa.C.S.A. § 901(a), in conjunction with the murder statute, 18 Pa.C.S.A. § 2502(a) (murder of the first degree). Accordingly, the elements of attempted murder are (1) the taking of a substantial step, (2) towards an intentional killing. *See* 18 Pa.C.S.A. §§ 901(a), 2502(a).

¶ 11 The statutory definition of aggravated assault applicable to this case provides as follows:

(a) Offense defined.—A person is guilty of aggravated assault if he:

. . .

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any … officer … enumerated in subsection (c) …, while in the performance of duty;

. . .

(c) Officers, …, enumerated.—The officers … referred to in subsection (a) shall be as follows:

(1) Police officer.

18 Pa.C.S.A. § 2702(a)(2), (c)(1).

¶ 12 Accordingly, the applicable elements of aggravated assault are (1) an attempt to cause or intentionally, knowingly or recklessly causing serious bodily injury; (2) to a police officer; (3) in the performance of his duty.

¶ 13 In *Commonwealth v. Jones*, 427 Pa.Super. 345, 629 A.2d 133 (Pa.Super.1993), this Court addressed the same issue of whether aggravated assault against a police officer under 18 Pa.C.S.A. § 2702(a)(2) merges with attempted murder and concluded that the two crimes are not greater and lesser-included offenses and therefore do not merge.[3,4]

¶ 14 Attempted murder includes an element that is not required to commit aggravated assault under section 2702(a)(2). That element is a specific intent to kill. Aggravated assault under section 2702(a)(2) includes elements that are not required to commit attempted murder. Those elements are proof that the victim was an enumerated officer in the performance of duty.

¶ 15 Thus, because each crime has at least one additional element not included in the other crime, neither can be a lesser-included offense of the other. Accordingly, the trial court did not err in failing to

---

**2.** At this point, we note that our Supreme Court has held that aggravated assault under 18 Pa.C.S.A. § 2702(a)(1) and attempted murder are greater and lesser-included offenses which merge. *See Anderson* (concluding that every element of aggravated assault under section 2702(a)(1) is subsumed in the elements of attempted murder). However, Johnson was convicted under section 2702(a)(2), which has different language than section 2702(a)(1). Accordingly, the cases addressing merger of convictions pursuant to section 2702(a)(1) are inapposite and we must conduct an independent analysis addressing section 2702(a)(2).

**3.** Johnson would have us conclude that *Jones* has been overruled by subsequent cases, including *Anderson*, which address the merger

of attempted murder and aggravated assault. However, none of the cases cited by Johnson addresses the viability of *Jones*, or its determination regarding aggravated assault against a police officer and attempted murder. Moreover, none of the cases relied upon by Johnson address the specific issue in this case, that being whether attempted murder and aggravated assault under 18 Pa.C.S.A. § 2702(a)(2) merge for sentencing purposes.

**4.** We find it necessary to note, as we did in *Jones*, that the aggravated assault statute in sections 2702(a)(2) and 2702(a)(3) enumerates specifically protected classes of persons and evinces a legislative concern with the protection of police officers. *Jones*, 629 A.2d at 137 n. 7.

merge the crimes for purposes of sentencing.

■ ¶ 16 Johnson next argues that the trial court erred in admitting certain evidence at trial. Essentially, Johnson asserts that the trial court erred in permitting the Commonwealth to introduce into evidence multiple firearms as well as comments written in a notebook discovered in Johnson's bedroom, because the evidence was irrelevant.[5]

¶ 17 We begin by observing that an appellate court may reverse a trial court's ruling regarding the admissibility of evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225, 229 (2000). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record. *Commonwealth v. Cameron*, 780 A.2d 688, 692 (Pa.Super.2001).

■ ¶ 18 The basic requisite for the admission of any evidence in a case is that it be competent and relevant. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa.Super.2003). Though relevance has not been precisely or universally defined, the courts of this Commonwealth have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Id.*

¶ 19 Our review of the record reflects that upon request of the Commonwealth, the trial judge permitted the Commonwealth to introduce into evidence the fact that Johnson had a stash of firearms in his bedroom and several of Johnson's journal entries. At trial, Johnson's defense was that he was justified in shooting Officer Dunlap because Johnson feared that the officer was stalking and planning to shoot Johnson. N.T., 9/30/02–10/4/02, at 47–50. Johnson contended that he shot Officer Dunlap to keep the officer off-balance. *Id.*

¶ 20 Johnson testified that on the day of the incident, he was attempting to avoid contact with the police but that Officer Dunlap was stalking Johnson and Johnson only shot Officer Dunlap when Johnson saw Officer Dunlap reaching for his gun. Johnson further testified that he continued to shoot Officer Dunlap because he believed Officer Dunlap had his gun out and would shoot Johnson. Johnson stated that he shot Officer Dunlap every time Officer Dunlap reached to try to get his hand on his pistol. N.T., 9/30/02–10/4/02, at 579–92.

¶ 21 In deciding to admit the evidence in question, the trial court stated:

Well, the evidence is going to support [the Commonwealth's] theory of the case

---

5. Specifically, the Commonwealth introduced the following items seized from Johnson's home: (1) a .30 caliber assault rifle, N.T., 9/30/02–10/4/02, at 404; (2) five magazines for the assault rifle, *id.* at 407–09; (3) a .38 Fabrica DeArms revolver, *id.* at 405–06; (4) a magazine for a Glock .45, *id.* at 409; and (5) a Marksman BB pistol, *id.* at 406.

In addition, the Commonwealth introduced the following two written entries found on a tablet in Johnson's desk, the first being a reference to Biblical scripture and the second being a list: (1) "Isaiah, 54:17. 'But in that coming day, no weapon turned against you shall succeed, and you will have justice against every … courtroom lie. This is the heritage of the servants of the Lord. This is the blessing I have given you,' says the Lord." N.T., 9/30/02–10/4/02, at 410–11; and (2) "No. 1 'S.O.C.' No. 2 'coffee shop.' No. 3, 'magistrate.' And No 4, 'police force-render ineffective.'" *Id.* at 411–12.

in that this was not a question of a justification issue. It's a question of [Johnson having] it out to—he had a motive to get the police.

N.T., 9/30/02–10/4/02, at 367.

¶ 22 Given the facts of this case and the theory presented by the defense, we conclude that the evidence in question is relevant in that it reasonably tends to disprove the defense theory of justification. Accordingly, we cannot conclude that the trial court abused its discretion in its ruling to admit the evidence. Johnson's contrary claim lacks merit.

■ ¶ 23 In his final issues, Johnson challenges a comment made by the Assistant District Attorney during her closing argument and the effective assistance of trial counsel in failing to object to the comment. Initially, Johnson argues that the prosecution committed misconduct when the Assistant District Attorney, in her closing remarks to the jury, referenced the reaction of an eyewitness to the crime and asked the jury to "get mad" about the crime. N.T., 9/30/02–10/4/02, at 733–34. However, because Johnson made no objection to the prosecutor's statements at the time of the remarks, the claim of error is waived. *See Commonwealth v. Stafford,* 749 A.2d 489, 496 n. 7 (Pa.Super.2000) (holding that a claim of prosecutorial misconduct in closing statement was waived for failure to object at time the remark was made). Therefore, we cannot reach the merits of this claim.

■ ¶ 24 Johnson attempts to circumvent the fact that he waived this issue by asking this Court to address the merits of his challenge to the prosecutor's comments on direct appeal under the guise of the plain error doctrine. *See* Brief for Appellant at 41–47. However, our Supreme Court abolished the plain error doctrine in *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974). We are mindful that the formal purpose of the Superior Court is to effectuate the decisional law of the Supreme Court as faithfully as possible. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382, 386 (1985). Accordingly, it is not within our purview to usurp the authority of the Supreme Court and resurrect the plain error doctrine. Therefore, we decline Johnson's invitation to address the merits of his claim under that theory.

■ ¶ 25 In addition, Johnson attempts to raise this issue for our review as a claim that trial counsel was ineffective for failing to object to the prosecutor's statement. Claims of ineffective assistance of counsel are evaluated under the following standards:

Counsel will be found to be ineffective where (1) there is arguable merit to the underlying claim; (2) the course chosen by counsel does not have a reasonable strategic basis designed to advance the defendant's interests; and (3) the error of counsel prejudiced the petitioner, *i.e.,* there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different.

*Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326 (1999). Counsel will not be deemed ineffective for failing to raise a baseless claim. *Commonwealth v. Roberts,* 545 Pa. 460, 681 A.2d 1274, 1276 (1996).

■ ¶ 26 However, in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), the Pennsylvania Supreme Court stated that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id.* at 738. Underlying this rule is the Supreme Court's observation that "time is necessary for a petitioner to discover and fully develop claims related to

trial counsel ineffectiveness." *Id.* at 737–38.

¶ 27 The rationale behind the *Grant* rule is threefold. "First, ineffectiveness claims, by their very nature, often involve claims that are not apparent on the record." *Id.* at 737. "Second, even presuming the merit of the claim is apparent on the existing record, oftentimes, demonstrating trial counsel's ineffectiveness will involve facts that are not available on the record." *Id.* "Third, as multiple courts have recognized, the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." *Id.*

¶ 28 Thus, "the record may not be sufficiently developed on direct appeal to permit adequate review of ineffectiveness claims[.]" *Id.* at 737. Because appellate courts do not normally consider issues that were not raised and developed in the court below, the *Grant* court reasoned that "deferring review of trial counsel ineffectiveness claims until the collateral review stage of the proceedings offers a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.* at 738.

¶ 29 Johnson attempts to evade the restrictions of *Grant* by claiming that trial counsel's ineffectiveness is apparent on the record and notes that the trial court addressed this issue in its Opinion. We disagree.

¶ 30 Upon our review of the record, we conclude that only the first prong of the ineffectiveness test may be apparent on the record, *i.e.*, whether there is arguable merit to the underlying claim that trial counsel should have objected to the comment made by the prosecution during closing argument. However, the record is silent as to the second and third prongs of the ineffectiveness test. Further, although the trial court briefly commented on this

issue in its Opinion, *see* Trial Court Opinion, 12/4/03, at 6, the trial court did not conduct an evidentiary hearing on Johnson's claim of ineffective assistance of counsel. Accordingly, we are required to apply our Supreme Court's holding in *Grant* and dismiss Johnson's ineffectiveness claim without prejudice for him to raise it in a post-conviction petition.

¶ 31 Judgment of sentence affirmed.

¶ 32 LALLY–GREEN, J., files a concurring statement.

LALLY–GREEN, J., Concurring.:

¶ 1 While I agree with the result of the Majority's well-reasoned opinion, I write separately to explain my understanding of the application of the merger doctrine in the instant matter. The Majority concludes that attempted murder and aggravated assault under 18 Pa.C.S.A. § 2702(a)(2) do not merge because each crime contains an element that the other does not. Majority Opinion, at 8.

¶ 2 In my opinion, we first focus on whether the elements of the lesser crime are all included within the greater crime. *See, Commonwealth v. Anderson*, 538 Pa. 574, 650 A.2d 20, 24 (1994) ("Our inquiry...is whether the elements of the lesser crime are all included within the elements of the greater crime...."). Under § 2702(a)(2), the Commonwealth must prove that the aggravated assault victim is an enumerated officer in the performance of duty. Attempted murder, 18 Pa.C.S.A. § 901, contains no such requirement.

¶ 3 Here, since the elements of the lesser crime are not all included in the greater crime, our inquiry stops. In other words, the elements of aggravated assault, the lesser crime, are not all included within the elements of attempted murder, the greater crime, and the two do not merge. I believe we need go no further.

¶ 4 Accordingly, I respectfully concur in the result.