J-S47026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARNELL RAY LEWIS, JR., | |
| Appellant | No. 2968 EDA 2013 |

Appeal from the Judgment of Sentence of September 9, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0005370-2012

BEFORE: MUNDY, OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 13, 2014**

Appellant, Darnell Ray Lewis, Jr., appeals from the judgment of sentence entered on September 9, 2013, as made final by the denial of his post-sentence motion on September 17, 2013. We affirm.

The trial court accurately summarized the factual background of this case as follows:

> On the morning of October 18, 2011, Barbara Hausknect [("Hausknect")] left her home in Allentown, Pennsylvania and travelled by foot to the Taco Bell located on Route 145, Whitehall, Lehigh County, Pennsylvania to get her paycheck. Hausknect was with her friend, Jeremiah "J.J." Carasquilla ("Carasquilla"). From Taco Bell, the two walked further north on Route 145 to the Walmart Superstore. The two shopped at Walmart for approximately 30 to 45 minutes. While there, Hausknect selected a few items and proceeded to the checkout lane. There, she signed over her paycheck to pay for her selected items and obtained the remainder of the money owed to her. Hausknect put the additional money, totaling approximately

$500[.00], into her black wristlet wallet. Hausknect and Carasquilla exited through the doors and walked to their left.

While speaking to her friend, Hausknect noticed [Appellant] pacing nearby and [Ferante Troutman ("Troutman")] approximately [five] feet away. The individuals made her nervous and they continued to walk in front of Hausknect and Carasquilla. [Appellant], wearing a red long-sleeved shirt, gray sweatshirt, jeans[,] and a black hat, approached Hausknect and asked her for a cigarette. Hausknect replied that she did not have one. [Appellant] then asked for a lighter and Hausknect handed Carasquilla matches to give to [Appellant]. [Appellant] and Carasquilla were now behind Hausknect. [Appellant] then approached Hausknect from behind and asked for her money. She replied "Hell, no" and continued to walk away. [Appellant] then asked her for her wallet, and she again replied, "No."

After Hausknect refused to give [Appellant] the wallet, [Appellant] pulled out a gun and pointed it at her. [Appellant] grabbed at Hausknect and tried to take her wallet from her left hand. Hausknect struggled with [Appellant]. As Hausknect attempted to run away from [Appellant], she was shot directly in her back. After she fell to the ground, [Troutman] held Hausknect down and [Appellant] hit her in the mouth with the gun, cutting her below her nose and damaging her teeth. The individuals got her wallet and got into a silver or blue vehicle. . . .

Immediately, people from nearby stores came to Hausknect's aid. They applied pressure to her wound and attempted to calm her down. At approximately 12:30 p.m., members of the Whitehall Township Police Department arrived on scene. Patrolman Derrick Williams observed several people flagging him down and found [] Hausknect lying on the ground. Patrolman Williams spoke to the victim and attempted to get a description of the perpetrator(s) and the vehicle involved. Carasquilla, who had initially run when [Appellant] pulled out the gun, returned to Hausknect's location and related that the two black males involved ran to a blue vehicle and fled the area. Patrolman Williams observed blood pulsing out of the victim's back and blood in her mouth area. He directed her to stop attempting to move and determined that she was traumatized and in shock. [Hausknect] ultimately left by ambulance and was taken to Lehigh Valley Hospital for immediate surgery. During the

- 2 -

surgery, a bullet was retrieved from [Hausknect]'s back and was taken into evidence.

* * *

On October 18, 2011, [Tymesha] McKenzie [("McKenzie"), Appellant's co-defendant,] received a phone call from the Appellant and Troutman, asking her to give them a ride. She and her then [two] year old son picked the two men up in Allentown and proceeded to the Walmart in Whitehall. She was driving a blue Chevrolet Cobalt bearing a license plate from the State of North Carolina. The Appellant was seated in the front passenger seat and Troutman and the minor child were in the back seat. McKenzie parked her vehicle in the parking lot while Troutman and the Appellant went inside the Walmart. The Appellant was wearing a red shirt and Troutman was wearing a gray shirt.

Shortly thereafter, the two men emerged from the Walmart, without any bags or packages. They reentered McKenzie's vehicle. The Appellant took out a silver "cowboy style" gun, placed it on his lap, and instructed McKenzie to drive. One of the men instructed her to stop the vehicle when they noticed Hausknect walking in the parking lot. The Appellant, still possessing the gun, walked in Hausknect's direction, with Troutman a small distance behind the Appellant. McKenzie watched their interaction with Hausknect from the side window of her vehicle. She saw the Appellant point the gun at Hausknect and saw her fall, although she did not actually hear any shots.

Once Hausknect fell to the ground, McKenzie saw Troutman take her wallet and both men returned to McKenzie's vehicle. When McKenzie asked the Appellant if he shot Hausknect, the Appellant replied that he had to because she wasn't going to give him her wallet. McKenzie, Troutman, and the Appellant left the area. While driving back to Allentown, the Appellant removed the money from the [wallet] and threw the wallet out [of] the window.

* * *

> Dr. [Michael] Badellino testified that the area where [Hausknect] was shot was a critical part of the body in that it receives secretions of the pancreas and processes bile from the liver.

Trial Court Opinion, 11/5/13, at 3-7 (honorifics omitted).

The procedural history of this case is as follows. On January 5, 2012,[1] Appellant was charged via criminal complaint with attempted homicide,[2] two counts of robbery,[3] aggravated assault,[4] theft by unlawful taking,[5] receiving stolen property,[6] and conspiracy to commit robbery.[7] A criminal information charging those same offenses was filed on December 20, 2012. A non-jury trial commenced on July 29, 2013. On July 31, 2013, the trial court found Appellant guilty on all charges. On September 9, 2013, the trial court sentenced Appellant to an aggregate term of 30 to 60 years' imprisonment.

---

[1] The criminal complaint contains an error, as it lists the date as January 5, 2011.

[2] 18 Pa.C.S.A. §§ 901, 2501.

[3] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 3701(a)(1)(ii).

[4] 18 Pa.C.S.A. § 2702.

[5] 18 Pa.C.S.A. § 3921.

[6] 18 Pa.C.S.A. § 3925.

[7] 18 Pa.C.S.A. §§ 903, 3701.

On September 16, 2013, Appellant filed a post-sentence motion which was denied on September 17, 2013. This timely appeal followed.[8]

Appellant presents two issues for our review:

1. Was the evidence insufficient to support the verdict of attempted murder[?]

2. Was the verdict against the weight of the evidence[?]

Appellant's Brief at 4 (capitalization removed).

Appellant first contends that there was insufficient evidence to convict him of attempted murder. "Whether sufficient evidence exists to support the verdict is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Patterson***, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). In reviewing a sufficiency of the evidence claim, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted). "Additionally, the evidence at trial need not preclude every possibility of innocence. . . . [T]he fact-finder is free to

---

[8] On October 8, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). ***See*** Pa.R.A.P. 1925(b). On October 15, 2013, Appellant filed his concise statement. On November 5, 2013, the trial court issued its Rule 1925(a) opinion. Both issues raised on appeal were included in Appellant's concise statement.

believe all, part[,] or none of the evidence." ***Commonwealth v. Trinidad***, 90 A.3d 721, 728 (Pa. Super. 2014) (citation omitted).

"[T]he elements of attempted murder are (1) the taking of a substantial step[] (2) towards an intentional killing." ***Commonwealth v. Johnson***, 874 A.2d 66, 71 (Pa. Super. 2005), *appeal denied*, 899 A.2d 1122 (Pa. 2006) (citation omitted). In this case, there is no dispute that a substantial step was taken. Appellant fired his gun, which is a substantial step towards a killing. However, Appellant contends that the substantial step was not towards an intentional killing Hausknect was only shot one time which shows that he did not intend to kill her.

This argument is without merit. As Appellant acknowledges, our Supreme Court "has held that evidence of death by gunshot to a vital organ of the body may be sufficient to establish the requisite intent for first-degree murder." ***Commonwealth v. Morales***, 91 A.3d 80, 88 (Pa. 2014) (citations omitted); ***see Commonwealth v. Burno***, 2014 WL 2722758, *10 (Pa. June 16, 2014) (citations omitted) ("It is well-settled that specific intent to kill may be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body."); ***Commonwealth v. Sanchez***, 82 A.3d 943, 967 (Pa. 2013) (citation omitted) ("The [fact-finder] may infer the intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body."). In this case, Dr. Badellino

testified that the area where Hausknect was shot was a vital part of the body.

Appellant contends that although the trial court may infer a specific intent to kill from a shot to a vital part of the body, it was required to consider all of the evidence in determining whether specific intent to kill was present. However, we must view the evidence in the light most favorable to the Commonwealth. The mere presence of one fact from which the trial court could infer specific intent was sufficient to support the trial court's conclusion that Appellant possessed the requisite intent to kill.

Appellant also contends that the evidence was insufficient to convict him of attempted murder because McKenzie testified that Appellant told her he only shot Hausknect because she would not give him the wallet. This argument is flawed for two reasons. First, it views the evidence in the light most favorable to Appellant instead of in the light most favorable to the Commonwealth. Second, Appellant having shot Hausknect because she would not give him her wallet is not mutually exclusive from Appellant intending to murder Hausknect. The trial court could have determined that Appellant chose to murder Hausknect because she would not give him the wallet. Accordingly, we conclude that the evidence was sufficient to convict Appellant of attempted murder.

Appellant next contends his attempted murder conviction was against the weight of the evidence. "The record reflects that Appellant had a bench

trial, so the trial judge was the fact-finder. The same evidence in the record that provided sufficient evidence to support Appellant's conviction also convinced the trial judge that the verdict was not against the weight of the evidence." *Commonwealth v. Davidson*, 860 A.2d 575, 582 (Pa. Super. 2004), *affirmed*, 938 A.2d 198 (Pa. 2007). "We will respect a trial court's findings with regard to the credibility and weight of the evidence [after a bench trial] unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa. Super. 2012) (internal quotation marks and citation omitted).

We have reviewed all of the evidence presented at trial and conclude that the trial court's findings are not "manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." *Id.* Other than the arguments Appellant raised as to the sufficiency of the evidence, he does not present any argument for why the verdict was against the weight of the evidence. Accordingly, we conclude that Appellant's second issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/13/2014</u>