J-S11005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON MCKELVEY | : | |
| | : | |
| Appellant | : | No. 65 EDA 2018 |

Appeal from the Judgment of Sentence November 16, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-41-CR-0007417-2016,
CP-51-CR-0007421-2016

BEFORE:  SHOGAN, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SHOGAN, J.:                          **FILED MAY 13, 2019**

Brandon McKelvey ("Appellant") appeals from the judgment of sentence imposed after a jury found him guilty of murder in the first degree, conspiracy to commit murder, two counts of robbery, two counts of kidnapping for ransom, firearms not to be carried without a license, firearms not to be carried in public, possession of an instrument of crime ("PIC"), attempted murder, and aggravated assault.[1]  We affirm.

The trial court summarized the facts of this case as follows:

> On April 17, 2014, [Appellant], Nysare Alston, Christopher Corley, [DeForest Johnson,] and Ken Thomas, kidnapped Carl Johnson and Ryan Hardy, as part of a robbery scheme.  During the course of the robbery, both men were shot.  [Carl] Johnson died as a result of his injuries.  Hardy was injured, but survived.

---

[1]  18 Pa.C.S. §§ 2502(a), 903, 3701, 2901, 6106, 6108, 907, 901(a), and 2702, respectively.

> [1] Co-defendant DeForest Johnson filed a Motion for Severence [sic], which was granted. Co-defendant, Ken Thomas entered into an open guilty plea to murder of the third degree, kidnapping, conspiracy to commit robbery, VUFA [Violations of the Uniform Firearms Act] charges, aggravated assault, [PIC] and avoiding apprehension. N.T., 11/08/17 at pp. 200–202. Thomas testified in the instant matter pursuant to a Memorandum of Agreement with the Commonwealth. He has not been sentenced yet.

Trial Court Opinion, 5/16/18, at 2–3.[2] Following Appellant's jury trial and convictions, the trial court sentenced him on November 16, 2017, "to concurrent terms of life without the possibility of parole for the first degree murder and conspiracy to commit murder convictions and a consecutive ten (10) to twenty (20) years confinement for the attempted murder conviction. No further penalty was imposed for the remainder of the charges." *Id.* at 1–2.

Appellant filed a post-sentence motion challenging the sufficiency and weight of the evidence and the length of his sentence. Post-Sentence Motion, 11/27/17, at ¶¶ 4, 5. The trial court denied Appellant's post-sentence motion without a hearing. Order, 12/11/17. This appeal followed. Notice of Appeal, 1/2/18. Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single question: "Was there sufficient evidence at trial to support the finding of guilt to the charge[s] of murder,

---

[2] Appellant was tried together with co-defendants Corley and Alston. Co-defendant Corley's appeal is lodged at 209 EDA 2018, and co-defendant Alston's appeal, at 215 EDA 2018.

criminal conspiracy, robbery, kidnapping, [firearms not to be carried without a license and firearms not to be carried in public], PIC, attempted murder and aggravated assault?" Appellant's Brief at 4.[3] As a preliminary matter, we address whether Appellant has preserved his issue for appellate review.

This Court has stated, "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement **must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient**." ***Commonwealth v. Stiles***, 143 A.3d 968, 982 (Pa. Super. 2016) (quoting ***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013)) (internal quotation marks omitted; emphasis added); ***see also*** Pa.R.A.P. 1925(b)(4)(ii) ("[T]he Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). "Such specificity is of particular importance in cases where, as here, [A]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Garland***, 63 A.3d at 344. Failure to identify what specific elements the Commonwealth did not prove at trial in a Rule 1925(b) statement renders an appellant's sufficiency-of-the-evidence claim waived for

---

[3] We note that Appellant's brief violates Pa.R.A.P. 2111(a)(11) in that it does not include a copy of his Pa.R.A.P. 1925(b) statement. Because this omission does not preclude our review, we do not quash the appeal.

appellate review. *See Commonwealth v. Tyack*, 128 A.3d 254, 261 (Pa. Super. 2015) (finding appellant's issues waived where "1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction").

Here, Appellant generically states in his Pa.R.A.P. 1925(b) statement that:

> [t]he evidence presented at trial by the Commonwealth was insufficient as a matter of law to sustain a verdict of guilt for the charges of murder, criminal conspiracy, robbery, kidnapping, [firearms not to be carried without a license and firearms not to be carried in public], PIC, attempted murder and aggravated assault.

Pa.R.A.P. 1925(b) Statement, 2/15/18, at ¶ 3(a). Appellant does not identify any element of any conviction that was not proven beyond a reasonable doubt. Additionally, Appellant's "Statement of Questions Involved" fails to specify the elements of the crimes he is challenging on appeal. Appellant's Brief at 4. Consequently, Appellant's non-specific claim challenging the sufficiency of the evidence, which fails to state any elements of any crimes allegedly not proven by the Commonwealth, is waived. *Tyack*, 128 A.3d at 261.

We note that, in the argument section of his appellate brief, Appellant "argues that the Commonwealth did not prove that he was involved in the shooting, and if he was, . . . that he was the one who fired the shots" that killed Carl Johnson and injured Ryan Hardy. Appellant's Brief at 10. Appellant further argues "that the Commonwealth's evidence failed to establish beyond a reasonable doubt that he possessed the specific intent to kill and that he

cannot be held liable for the actions of his co-defendant [Alston] under a theory of accomplice liability." *Id.* To the extent that Appellant attempts to challenge the sufficiency of the *mens rea* evidence supporting his convictions,[4]

_____

[4] We have explained the difference between a conspiracy and accomplice liability as follows:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S. § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

> "[M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Golphin*, 161 A.3d 1009, 1018–1019 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1051 (Pa. 2017) (quoting *Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (citations and quotations omitted)).

we would conclude that, even if not waived, his claim would not merit relief.

*See id.* at 11–12 (citing 18 Pa.C.S. § 306(c), (d)).

In reaching this conclusion, we would rely on—and adopt as our own—the well-reasoned analysis of the trial court in its Pa.R.A.P. 1925(a) opinion. Trial Court Opinion, 5/16/18, at 17–25. Specifically, the trial court disposed of Appellant's sufficiency challenge as follows:

> Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented sufficient evidence to establish that it was [Appellant] who murdered [Carl Johnson] and that the murder was willful, deliberate, and premeditated. [Appellant] used a deadly weapon on a vital part of the victim's body. [Carl Johnson] was shot four (4) times. Two (2) of the bullets, which pierced [his] aorta, stomach, and liver, caused injuries that were fatal. [Carl Johnson's] wrists were bound with duct tape and he had duct tape over his eyes when he was shot. The Commonwealth presented ballistics evidence that a bullet made a divot in the ground under [Carl Johnson's] body, indicating that he was shot while laying bound in duct tape on the ground.
>
> Aaron Smith[5] testified that [Appellant] told him [Appellant] was the only person who fired the gun at both [Carl Johnson] and Ryan Hardy, stating that he "put them down because that's what I do."
>
> Ken Thomas testified that the group agreed beforehand that [Carl Johnson] would have to be killed because he could identify [co-defendant] Alston. Thomas testified that [Appellant] told [Thomas] that [Appellant] used the nine (9) millimeter to shoot [Carl Johnson]; ballistics evidence recovered from the scene and the medical examiner's office was determined to be from a nine

---

5 Aaron Smith and Appellant were "on the same unit" in prison; they became close because they had mutual friends, and Mr. Smith helped Appellant use the law library. N.T., 11/13/17, at 104–105.

(9) millimeter gun. Additionally, Thomas testified that when the five (5) conspirators regrouped, after leaving the scene of [Carl Johnson's] death, they ridiculed [Appellant] for shooting "like he was scared or something."[6]

As to the conspiracy conviction, the Commonwealth presented testimony from Thomas that [Appellant] actively engaged in planning to kidnap, rob, and murder [Carl Johnson] with the help of his co-defendants. [Appellant] bought the supplies to tie the victims up. [Appellant] met up with his co-conspirators to flesh out the plan. [Appellant] aided in forcefully taking [Carl Johnson] and Ryan Hardy from their car and shoving them into the van. [Appellant] was present in the van with [Carl Johnson] and Hardy for hours while they were tortured. [Appellant] shot both men after they were thrown from the van. [Appellant] was present at [co-defendant DeForest] Johnson's house, after the murder, when [Carl Johnson's] cocaine was divided up equally among the five (5) conspirators. Furthermore, [Appellant] admitted to Aaron Smith, when the two were in prison together, that he and his friends kidnapped, robbed, and killed [Carl Johnson].

Furthermore, cell site analysis on the phone billed to [Appellant] in his name, determined that [Appellant] used cell-phone towers in the vicinity of [Carl Johnson's] murder at 5:13 p.m., 5:16 p.m., 5:45 p.m., and 5:49 p.m. on April 17, 2014. The same phone (along with the phones attributable to Corley, [DeForest] Johnson, and Thomas) used cell-phone towers in the vicinity of the 3900 block of Pennsgrove Street, where [Appellant] met with his co-conspirators, after the murder of [Carl Johnson], between 6:38 p.m. and 8:04 p.m. on the same date.

As to the robbery conviction, the Commonwealth presented evidence that [Carl Johnson] and Hardy were tortured and shot. The conspirators stole drugs, jewelry and a cell phone from [Carl Johnson] and a wallet and cell phone from Hardy. [Carl Johnson's] car was stolen and drugs and a television were taken from his house.

As to the kidnapping conviction, the Commonwealth presented evidence that [Appellant] and his co-conspirators

_____

[6] N.T., 11/8/17, at 162–163.

- 7 -

forcibly removed [Carl Johnson] and Hardy from [Carl Johnson's] vehicle, placed them in [Deforest] Johnson's van, bound their wrists with duct-tape, and placed duct-tape over their eyes. This was all done with the intention of stealing [Carl Johnson's] drugs and obtaining information on his "connect" [*i.e.*, supplier], so they could rob him as well. The two men were taken from the Strawberry Mansion area of Philadelphia to the Far Northeast area of Philadelphia where they were held in a place of isolation for hours, immobilized by duct-tape, tortured and ultimately shot multiple times.

As to the [firearms] and PIC convictions, trial counsel stipulated to the fact that [Appellant] did not have a valid license to carry a firearm pursuant to 18 Pa.C.S. § 6109(e). Furthermore, it is clear from the evidence that the gun was possessed with intent to commit a crime.

As to [the] attempted murder conviction, the Commonwealth presented evidence that [Appellant] shot at Ryan Hardy multiple times, hitting him twice: once in his right forearm and once in the left side of his torso. The agreement among the conspirators was that [Carl Johnson] would have to be killed, so that he could not act as a witness. Although it was not expected that Hardy would accompany [Carl Johnson], it logically follows that the same fate was intended for him once he inadvertently became a witness. In fact, [Appellant] told Aaron Smith that [Carl Johnson] and Ryan Hardy needed to be killed because they could identify [co-defendant] Nysare Alston.

To shoot someone is to knowingly and intentionally cause them serious bodily injury with a deadly weapon. "Attempted murder includes an element that is not required to commit aggravated assault under section 2702(a)(2). That element is a specific intent to kill." *Com. v. Johnson*, 874 A.2d 66, 71 (Pa. Super. 2005). Since there was sufficient evidence to sustain a conviction for attempted murder, it follows that the elements of aggravated assault were also met.

Based on the foregoing and the reasonable inferences deduced therefrom, the Commonwealth established beyond a reasonable doubt, by both direct and circumstantial evidence that [Appellant] was guilty of each of the crimes charged.

Trial Court Opinion, 5/16/18, at 22–25.  In sum, were we to reach this issue, we would conclude the Commonwealth proved beyond a reasonable doubt that Appellant was directly responsible for shooting Carl Johnson and Ryan Hardy and that he was criminally responsible for the other crimes as a co-conspirator.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/19