J-A18003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT STEPHONE GILMORE, | |
| Appellant | No. 1060 MDA 2015 |

Appeal from the Judgment of Sentence Entered June 9, 2015
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001212-2014

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 24, 2016**

Appellant, Robert Stephone Gilmore, appeals from the judgment of sentence of an aggregate term of 12½ to 25 years' imprisonment, imposed after a jury convicted him of attempted murder,[1] aggravated assault - attempted serious bodily injury,[2] aggravated assault - causing bodily injury with a deadly weapon,[3] firearms not to be possessed without a license,[4] and

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 901(a).

[2] 18 Pa.C.S. § 2702(a)(1).

[3] 18 Pa.C.S. § 2702(a)(4).

[4] 18 Pa.C.S. § 6106(a)(1).

recklessly endangering another person.[5]  Herein, Appellant challenges the sufficiency of the evidence to sustain his convictions and alleges the verdict is against the weight of the evidence.  He also raises challenges to the admission of evidence, the application of the merger doctrine, jury instructions, and the length of his sentence.  After careful review, we affirm.

The above-stated charges arose from an incident which took place on February 13, 2014, where Appellant and an unidentified co-conspirator attempted to kill Stephen Robinson ("Mr. Robinson") by firing multiple shots at him in the middle of the afternoon on a public street in downtown Carlisle, Pennsylvania.  Mr. Robinson escaped unharmed.  Unfortunately, two innocent bystanders, Jayonna Pope ("Ms. Pope") and Ashley Brown ("Ms. Brown") were not so lucky.  Ms. Pope was struck in the head by a stray bullet, and Ms. Brown was grazed by another bullet.  Appellant and his co-conspirator fled on foot, laughing, to a waiting car and then drove away.  Trial Court Opinion ("TCO"), 11/2/15, at 2-3.  Based on eye-witness testimony and the identification of Appellant from a photo array, a warrant was issued and Appellant was apprehended by the United States Marshall Service Fugitive Task Force in Brooklyn, New York.  *Id.* at 5.

---

[5] 18 Pa.C.S. § 2705.

Following a jury trial, Appellant was sentenced to the above-stated term on June 9, 2015.[6] Appellant filed a timely post-sentence motion, which was denied by order of court dated June 16, 2015. Subsequently, Appellant timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Herein, Appellant raises the following issues for our review:

I. Whether the evidence presented at trial was sufficient to convict Appellant of attempted murder, aggravated assault (attempted serious injury), aggravated assault (causing bodily injury with a deadly weapon), recklessly endangering another person ([Mr.] Robinson), and recklessly endangering another person ([Ms.] Pope)[?]

II. Whether the jury's finding of guilt as it relates to the charges of attempted murder, aggravated assault (attempted serious injury), aggravated assault (causing bodily injury with a deadly weapon), recklessly endangering another person ([Mr.] Robinson), and

---

[6] Appellant was originally sentenced on March 10, 2015, to an aggregate term of 17½ to 45 years' imprisonment, which included a sentence of 15 to 40 years' imprisonment on count 1 – attempted murder. Appellant filed a post-sentence motion requesting modification of his sentence based on allegations that the sentence was unreasonable and excessive. The trial court admitted that it "erroneously applied an illegally lengthy sentence which was the result of a calculation error arising from the Commonwealth's failure to present the issue of serious bodily injury to the jury as to Count I, Criminal Attempt – Criminal Homicide." TCO at 16. The Commonwealth subsequently filed a memorandum conceding that the maximum sentence for Appellant's attempted murder conviction is 20 years' imprisonment. On June 9, 2015, a re-sentencing hearing was held and the court re-sentenced Appellant to an aggregate sentence of 12½ to 25 years' imprisonment, which reflected consecutive sentences for attempted murder (10 to 20 years), aggravated assault (1 to 2 years), firearms not to be possessed without a license (1 to 2 years), and recklessly endangering another person (6 to 12 months). *Id.*

- 3 -

recklessly endangering another person ([Ms.] Pope) was against the weight of the evidence presented at trial[?]

III. Whether the trial court erred in allowing the admission of text messages allegedly composed by [Mr.] Robinson[?]

IV. Whether the trial court erred when it instructed the jury on transferred intent[?]

V. Whether the trial court erred when it failed to merge aggravated assault (causing bodily injury with a deadly weapon)([Ms.] Pope) with attempted murder[?]

VI. Whether the trial court abused its discretion and committed reversible error when it sentenced Appellant to an aggregate sentence of 12 and one half to 25 years[?]

Appellant's Brief at 7.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough and well-crafted opinion of the Honorable Albert H. Masland of the Court of Common Pleas of Cumberland County. We conclude that Judge Masland's extensive, well-reasoned opinion accurately disposes of issues I through IV presented by Appellant. *See* TCO at 1-16. Accordingly, with regard to these issues, we adopt Judge Masland's opinion as our own and affirm on that basis. We also affirm the trial court's decisions with respect to issues V and VI; however, we add the following discussion regarding these claims.

In issue V, Appellant asserts that the trial court erred when it failed to merge the aggravated assault - causing bodily injury with a deadly weapon charge with the attempted murder charge. It is well-settled that:

A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary.

- 4 -

In **Commonwealth v. Gatling**, 570 Pa. 34, 807 A.2d 890 (2002) (plurality), our Supreme Court clarified the appropriate analysis for determining when convictions should merge for the purposes of sentencing:

The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary *criminal* act. If the offenses stem from two different criminal acts, merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts. If the crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

**Id.** at 899.

To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at least one element that the other does not, then the sentences do not merge.

**Commonwealth v. Johnson**, 874 A.2d 66, 70-71 (Pa. 2005) (emphasis added).

"Attempted murder is defined by reading the attempt statute, 18 Pa.C.S.A. § 901(a), in conjunction with the murder statute, 18 Pa.C.S.A. § 2502(a) (murder of the first degree). Accordingly, the elements of attempted murder are (1) the taking of a substantial step, (2) towards an intentional killing. **See** 18 Pa.C.S.A. §§ 901(1), 2502(a)." **Johnson**, 874 A.2d at 71. "A person is guilty of aggravated assault if he attempts to cause

- 5 -

or intentionally or knowingly causes bodily injury to another *with a deadly weapon*." 18 Pa.C.S. § 2702(a)(4) (emphasis added). It is clear that not all of the required elements of aggravated assault – causing bodily injury with a deadly weapon, are included in the statutory elements of attempted murder. Specifically, Section 2702(a)(4) requires the use of a deadly weapon, whereas the elements of attempted murder do not. **See** 18 Pa.C.S. §§ 901(a), 2502(a). Thus, the crime of aggravated assault – causing bodily injury with a deadly weapon, is not a lesser-included offense of attempted murder, and the trial court was correct in not merging these two charges.

Moreover, we note that it would not be proper to merge the two charges in the present case, as the charges involved crimes against different victims. Appellant fired multiple shots at the intended victim, Mr. Robinson, in the presence of innocent bystanders, thereby exposing multiple people to the risk of serious bodily injury or death. As the trial court explained in its Rule 1925(a) opinion, Appellant was convicted of the attempted murder of Mr. Robinson (not Ms. Pope), and his corresponding aggravated assault conviction relating to Mr. Robinson was properly merged for sentencing purposes. TCO at 17. The remaining aggravated assault charge for which Appellant has been sentenced, and which is at issue here, is related to Ms. Pope. There was no greater charge into which the conviction for aggravated assault against Ms. Pope could merge. Thus, we agree with the trial court's conclusion that Appellant's claim of error for failure to merge these two charges "is simply factually erroneous." **Id.**

Moreover, we add that Appellant may not escape responsibility for the separate crimes he committed against the intended victim *and* bystanders. As stated by our Supreme Court in **Commonwealth v. Yates**, 562 A.2d 908 (Pa. 1989), except for where the legislature unequivocally expresses a contrary intent: "[I]t remains the law of this Commonwealth that the life and safety of each citizen is to be protected *individually*. There is no 'two for one discount' in the Pennsylvania Crimes Code, and we will not permit criminals to imply one through distortion of the common law merger doctrine." **Id.** at 911 (footnote omitted).

Next, we address Appellant's claim VI regarding the length of his sentence. As discussed *supra*, Appellant was re-sentenced on June 9, 2015, to an aggregate sentence of 12½ to 25 years' imprisonment. That sentence reflected consecutive sentences for attempted murder (10 to 20 years), aggravated assault (1 to 2 years), firearms not to be possessed without a license (1 to 2 years), and recklessly endangering another person (6 to 12 months). TCO at 16. Appellant contends that his sentence is unreasonable and outside of the sentencing guidelines. He further alleges that the court failed to consider the appropriate sentencing factors set forth in 42 Pa.C.S. § 9721(b).

We note that Appellant's allegations regarding sentencing relate to the discretionary aspects of his sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant

challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and internal quotations omitted).

Here, the record clearly reflects that Appellant filed a timely notice of appeal, properly preserved his claim in his post-sentence motion, and included a separate, concise Rule 2119(f) statement in his appellate brief in compliance with the Pennsylvania Rules of Appellate Procedure. In his Rule 2119(f) statement, Appellant presents a detailed summary of his arguments in support of his allegations that his sentence is excessive and unreasonable. Upon review of that statement, we will consider the issues raised by Appellant to constitute substantial questions to meet the fourth requirement of the four-part test outlined above.

However, we deem the underlying claims to be meritless.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. In this context, an

abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

\*\*\*

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

***Commonwealth v. Perry***, 883 A.2d 599, 602-603 (Pa. Super. 2005)

(citations omitted).

We further note that:

When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

***Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa. Super. 2013) (citations

and internal quotation marks omitted).

Here, Appellant was clearly sentenced within the maximum range of the guidelines. Additionally, we note that not only did the trial court have the benefit of a PSI, it expressly stated that it considered all of the appropriate relevant factors, as explained in the following portion of its Rule 1925(a) opinion:

- 9 -

[Appellant's] crime was shocking. He opened fire with a deadly weapon during daylight hours on a populated downtown street in an attempt to kill Stephen Robinson. He wounded two innocent bystanders, one of whom he shot in the head. Per eyewitness testimony, he laughed as he fled the scene of his crime. His three victims each deserved to have their rights vindicated by the imposition of consecutive sentences and nothing less than the lengthy sentence the court imposed would do justice to the gravity of [Appellant's] crimes. The court was in receipt of letters of support from [Appellant's] family, but nothing therein can mitigate the gravity of [Appellant's] actions. His sentence is appropriate.

TCO at 16-17.

The trial court also made the following statements regarding Appellant's sentence at the re-sentencing hearing:

[T]he nature of this offense, senseless, reckless, horrific all come to mind as I recall the testimony of the victims in this case, lead me to believe that a lengthy sentence is necessary not only from the perspective of public safety or from the perspective of the nature of this crime and not wanting to depreciate the seriousness of the crime, frankly, it may also be necessary, [Appellant], for you.

…You are 20. Perhaps in your mid[-]thirties you will be out of your, what I would call based on this offense, violent lifestyle. Perhaps you will grow out of that, and that alone may protect society a little bit more. When people get into their thirties and forties, they generally don't commit the violent crimes such as the one that you committed here you were found by a jury to commit.

I hear the evidence too, and so when I say it was horrifying and senseless and reckless and all of those things, I heard that evidence and that's the way I feel, and I'm going to sentence accordingly. Because anything less than a maximum sentence in this case, which will give you an aggregate of 12 and a half years to 25 years, anything less than that overall maximum would not be appropriate.

N.T. Re-Sentencing, 6/9/15, at 6-7.

- 10 -

After careful review of the record, we are satisfied that the trial court gave appropriate consideration to the relevant factors before issuing Appellant's sentence. Thus, we ascertain no abuse of discretion.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016

COMMONWEALTH            :  IN THE COURT OF COMMON PLEAS OF
                                      :  CUMBERLAND COUNTY, PENNSYLVANIA
                                      :

         V.                               :

ROBERT S. GILMORE          :  CP-21-CR-1212-2014

### IN RE: OPINION PURSUANT TO PENNSYLVANIA RULE OF

### APPELLATE PROCEDURE 1925

**Masland, J., November 2, 2015:--**

Defendant, Robert S. Gilmore, appeals his convictions and judgments of

sentence for Attempted Murder, Conspiracy-Attempted Murder, Aggravated Assault

(Attempted Serious Injury), Aggravated Assault (Causing Bodily Injury with a Deadly

Weapon), Recklessly Endangering Another Person (Steven Robinson), and Recklessly

Endangering Another Person (Jayonna Pope).

He complains of the following matters on appeal:

    1. Whether the evidence presented at trial was sufficient to convict [Defendant] of Attempted Murder.

    2. Whether the evidence presented at trial was sufficient to convict [Defendant] of Conspiracy-Attempted Murder.

    3. Whether the evidence presented at trial was sufficient to convict [Defendant] of Aggravated Assault (Attempted Serious Injury).

    4. Whether the evidence presented at trial was sufficient to convict [Defendant] of Aggravated Assault (Causing Bodily Injury with a Deadly Weapon).

    5. Whether the evidence presented at trial was sufficient to convict [Defendant] of Recklessly Endangering Another Person (Steven Robinson).

    6. Whether the evidence presented at trial was sufficient to convict [Defendant] of Recklessly Endangering Another Person (Jayonna Pope).

    7. Whether the jury's finding of guilty as it relates to the charge of Attempted Murder was against the weight of the evidence presented at trial.

8. Whether the jury's finding of guilty as it relates to the charge of Conspiracy-Attempted Murder was against the weight of the evidence presented at trial.

9. Whether the jury's finding of guilty as it relates to the charge of Aggravated Assault (Attempted Serious Injury) was against the weight of the evidence presented at trial.

10. Whether the jury's finding of guilty as it relates to the charge of Aggravated Assault (Causing Bodily Injury with a Deadly Weapon) was against the weight of the evidence presented at trial.

11. Whether the jury's finding of guilty as it relates to the charge of Recklessly Endangering Another Person (Steven Robinson) was against the weight of the evidence presented at trial.

12. Whether the jury's finding of guilty as it relates to the charge of Recklessly Endangering Another Person (Jayonna Pope) was against the weight of the evidence presented at trial.

13. Whether the Court erred in allowing the admission of text messages allegedly composed by Steven Robinson.

14. Whether the Court erred when it instructed the jury on transferred intent in that a killing did not occur and the standard jury instruction was substantially modified from its original form.

15. Whether the Court abused its discretion in that the sentence imposed was unreasonable and excessive under the circumstances of the case.

16. Whether the Court erred when it failed to merge Aggravated Assault (Causing Bodily Injury with a Deadly Weapon) (Jayonna Pope) with Attempted Murder.

Statement of Matters Complained of on Appeal, filed July 8, 2015.

## I. Facts

On the afternoon of February 13, 2014 in downtown Carlisle, Pennsylvania, the Defendant and an as yet unidentified coconspirator tried to kill Stephen Robinson. The Defendant fired a gun repeatedly at Mr. Robinson, tracking him with the aim of his pistol as the victim fled down the street. Mr. Robinson escaped without harm. Sixteen-year-old Jayonna Pope was less fortunate. She was an innocent bystander struck in the head by a stray bullet. Thankfully, she survived. Another innocent bystander, Ashley

-2-

Brown, was also caught in the hail of gunfire and was grazed by a bullet. After firing at least 10 shots, the Defendant and the coconspirator fled on foot, both laughing, to a waiting car and drove away.

There were several witnesses to the crime. Fortuitously, for the Commonwealth but not the Defendant, off-duty Pennsylvania Constable Kevin Preston was stopped in his vehicle at a red light across from the shooters who were about 50 yards away. Constable Preston observed the two firing repeatedly at an indiscriminate rate while tracking two fleeing intended victims with the aim of their semiautomatic handguns. After the shooters ceased firing, they ran away from the scene in the direction of Constable Preston while simultaneously trying to keep their pants from falling down and putting their guns into the waistband of their pants. Part of this account was corroborated by the IronSky video surveillance system that is deployed at that intersection. The video depicted two African-American men running through the intersection in the direction described by Constable Preston while trying to keep their pants from falling down. Another witness, John Hopcraft, who observed the shooters from a second story window in a building at the intersection facing the crime scene, also testified that the shooters were two African-American men who fired approximately 10 shots.

Constable Preston then saw the shooters enter a white vehicle which he endeavored to follow, though his efforts were hampered by the fact that he was off-duty, in a civilian vehicle, and not empowered to violate traffic laws in his pursuit of the shooters. However, he has able to give chase long enough to get a clear view of the face of one of the shooters whom he later identified unequivocally from a photo array as

-3-

the Defendant. When he could no longer safely pursue the shooters' vehicle, Constable Preston stopped his vehicle and borrowed a cell phone from a bystander to call the Carlisle Police Department regarding the shooting.

Carlisle Police Officer Christopher Darhower was the first officer from the Department to arrive on the scene. Shortly after arriving, he was alerted to an injured victim inside the Buzz Express, a small convenience store at the scene of the crime. Inside, Officer Darhower discovered Jayonna Pope with a gunshot wound to the head. As a trained EMT, Officer Darhower immediately provided first aid. When supplemental EMTs arrived, Officer Darhower exited the Buzz Express and began looking for another possible victim. Just outside the store, he spoke to Ashley Brown, another bystander, who had been grazed by a bullet. He examined her to verify that she was not seriously injured and then moved on to help tape off the crime scene and begin to interview witnesses.

Officer Darhower observed two males walking through the area and stopped them for questioning. One of those males was later determined to be the intended victim, Stephen Robinson. At the time, Mr. Robinson was uninjured but also uncooperative and refused to answer questions. Officer Darhower was then called away from the scene to assist in a lockdown of the Carlisle Hospital as there were reports that one of the shooters may have been sending text messages to Jayonna Pope.

As noted by the trial testimony of Detective Freedman of the Carlisle Police Department, the investigation of this case was marked by resistance and lack of cooperation from witnesses and some victims because "[a] lot of people did not want to

talk about anything because of the fear involved of retaliation." Notes of Testimony, January 28, 2015 at 323 (hereinafter N.T., 1/28/2015 at __). Despite the refusal of cooperation of both Jayonna Pope and Stephen Robinson, Detective Freedman was able to get a tip leading him to an address that, through investigation, he would learn had last been rented by Robert Gilmore. That information allowed the Detective to compile a photo array that included the Defendant's picture which allowed Constable Preston to make an immediate and unequivocal identification of the Defendant as the shooter whose face he had seen. Based on that evidence, a warrant was issued for the Defendant's arrest and he was subsequently apprehended by the United States Marshall Service Fugitive Task Force in Brooklyn, New York.

At trial, both Jayonna Pope and Stephen Robinson were unable to identify the Defendant as the shooter. Ms. Pope testified that on the day of the shooting she saw two black males that she didn't recognize near the Buzz Express before she was shot. She could not identify her shooter, but when asked whether it was Robert Gilmore who shot her she said:

> No, it couldn't have been. I didn't see him there. I know him. He is a very close friend of mine. He used to be at my house all the time. We were inseparable. You could never take us apart. He was not there. I was seeing two black males that I had never seen them before.

N.T., 1/28/2015 at 405-06.

The Commonwealth declined to cross examine Ms. Pope and the court does not now ascribe any evil motive to her testimony though it was clearly discredited by the jury. Rather, the court reads this as the testimony of a crime victim who cannot identify her assailant and who, due to the bonds of friendship, cannot accept that she may have

been the accidental victim of a crime committed by her friend, the Defendant, despite all the evidence to the contrary.

On the other hand, the court finds it hard *not* to characterize the testimony of the intended victim, Stephen Robinson, as anything other than intentionally unreliable and motivated by a misguided sense of criminal omertà and a malicious desire to extract personal vengeance against the Defendant. Throughout his testimony, Mr. Robinson was evasive and equivocating, claiming he had no memory of the shooting but then later recalling details. He claimed the Defendant was not one of the shooters, but instead the shooters were alternately two white men or a white man and a Hispanic man that he did not recognize. He further testified that he was not the intended target of the shooting. This testimony, however, was thoroughly impeached by the text messages Mr. Robinson sent immediately after the shooting to multiple recipients wherein he claimed that he was the target of the shooting. When asked by one of the text recipients how he would respond to the shooting, his response was, "Get em." N.T., 1/27/2015 at 212-13; Commonwealth Ex. 18. For his part, Mr. Robinson explained away the text messages as nothing more than boastful falsehoods intended to impress women who liked so-called bad boys.

Neither the jury nor the court were impressed. The verdicts demonstrate the jury's rejection of Mr. Robinson's testimony. Instead, they chose to believe the objective, contemporaneously written text messages which prove that Mr. Robinson knew he was the intended target of the shooting and that he intended to exact his own revenge, and which amply explained his refusal to cooperate with the investigative authorities and prosecution. Even in court, Mr. Robinson testified that if he had believed

-6-

the Defendant had tried to kill him, "we'd have issues that would have already been dealt with probably." N.T., 1/27/2015, at 213.

In light of the credible evidence presented, including the unequivocal positive eyewitness identification by Constable Preston, the corroborating testimony of Mr. Hopcraft, and the objective evidence of the video surveillance camera and Mr. Robinson's text messages, the jury found the Defendant guilty of all charges.

## II. Discussion

As previously recited, the Defendant alleges sixteen errors for appellate review. The matters may be analyzed in six categories: challenges to the sufficiency of the evidence, challenges based on the weight of the evidence, an evidentiary claim, an erroneous jury instruction regarding the transferred intent doctrine, a challenge to the length of sentence, and a challenge to the erroneous application of the merger doctrine.

### A. Sufficiency of the Evidence

"The standard of reviewing the sufficiency of the evidence is whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Strouse*, 909 A.2d 368, 368-69 (Pa. Super. 2006). "The Commonwealth need not preclude every possibility of innocence or establish the defendant's guilt to a mathematical certainty." *Commonwealth v. Brotherson*, 888 A.2d 901, 904 (Pa. Super. 2005). "The finder of fact—here, the jury—exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the

-7-

evidence." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (internal citations omitted).

### 1. Attempted Murder

A person commits attempt when "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). To establish Murder in First Degree, the Commonwealth must prove the Defendant "acted with a specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was done with deliberation." *Commonwealth v. Smith*, 861 A.2d 892, 895 (Pa. 2004). Specific intent may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Ramtahal*, 613 Pa. 316, 33 A.3d 602, 607 (Pa. 2011). Malice also may be inferred from the use of a deadly weapon upon a vital part of the victim's body. *Id.* at 607-08.

Viewed in the light most favorable to the Commonwealth, the evidence presented at trial is sufficient to prove that the Defendant acted with the specific intent to kill and malice by firing a handgun repeatedly at Mr. Robinson while tracking him with his aim as Mr. Robinson fled for his life. By firing upwards of ten shots, the Defendant clearly took a substantial step towards killing Mr. Robinson. The volume of shots also tends to show the Defendant acted with the specific intent to kill. These facts were established by the credible eyewitness testimony of Constable Preston. Further, Mr. Robinson's contemporaneous text messages showing that he knew he was the intended target of the shooting also support that the Defendant acted with the specific intent to kill. For

-8-

these reasons, the jury's verdict of guilty for the crime of Attempted Murder is supported by sufficient evidence.

## 2. Conspiracy-Attempted Murder

The Defendant argues that his conviction for Conspiracy-Attempted Murder is not supported by sufficient evidence. This issue is moot as Defendant's conviction as to this count was dismissed by court order dated March 10, 2015.[1]

## 3. Aggravated Assault (Attempted Serious Injury)

To establish Aggravated Assault (Attempted Serious Injury), the Commonwealth must prove the Defendant attempted "to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life ...." 18 Pa.C.S. § 2702(a)(1). Here, the Defendant fired several gunshots at Mr. Robinson while tracking him with his aim as Mr. Robinson ran away. By doing so, he clearly took a substantial step towards seriously injuring Mr. Robinson. The fact that the Defendant fired these gunshots in daylight and in the presence of several innocent bystanders further proves that he behaved recklessly and with an extreme indifference to human life. As such, the jury's guilty verdict to this count was supported by sufficient evidence. The Defendant's objection, that Mr. Robinson testified that the Defendant was not the shooter, has no merit as the jury clearly found Mr. Robinson's testimony to that effect to be not credible. As always, the jury may choose to believe all, part, or none of the evidence. *Sanchez*, 36 A.3d at 39 (Pa. 2011).

---

[1] *See* 18 Pa.C.S. §906 ("A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime.").

### 4. Aggravated Assault (Causing Bodily Injury with a Deadly Weapon)

To establish this charge, the Commonwealth must prove the Defendant "attempt[ed] to cause or intentionally or knowingly cause[d] bodily injury to another with a deadly weapon ..." 18 Pa.C.S. § 2702(a)(4). The intent to cause bodily injury to one victim may be transferred to establish the intent element of a crime committed against an unintended victim. 18 Pa.C.S. § 303(b)(1). Here, the Defendant shot a handgun repeatedly at his intended victim resulting in his unintended victim, Ms. Pope, being shot in the head. Clearly, that constitutes a bodily injury caused by a deadly weapon. And, just as above, Ms. Pope's testimony that the Defendant did not shoot her was simply discredited by the jury. As such, the jury's verdict for this count of aggravated assault was supported by sufficient evidence.

### 5. Recklessly Endangering Another Person (Stephen Robinson)

"A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. Here, the Defendant fired numerous rounds in the direction of Mr. Robinson during daylight hours on a populated city street. In short, he recklessly placed Mr. Robinson in danger of death or serious bodily injury, and the jury's verdict was supported by sufficient evidence.

### 6. Recklessly Endangering Another Person (Jayonna Pope)

Here, Ms. Pope was on the same street in the vicinity of Mr. Robinson when the Defendant opened fire. By trying to shoot Mr. Robinson among innocent bystanders that included Ms. Pope, the Defendant's actions were manifestly reckless and placed

-10-

Ms. Pope in danger of death or serious bodily injury. The jury's verdict of guilty for this count was supported by sufficient evidence.

## B. Weight of the Evidence

The Defendant contends that the guilty verdicts discussed, *supra*, were against the weight of the evidence. Our Superior Court has stated:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Our Supreme Court has explained that appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Stated another way, … this Court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citations and internal quotation marks omitted).

Rather than discuss each count individually, the court will simply state that after hearing all the evidence at trial, none of the verdicts shocked our sense of justice or caused us to fall out of our chair. A new trial is not necessary. It is respectfully submitted that this discretionary determination not be disturbed on appeal.

## C. Admission of Text Messages

"The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion."

-11-

*Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006). At trial, Defendant's counsel objected to the admission of Mr. Robinson's text messages on the basis that they were improperly authenticated. At the outset, the court acknowledges that the authentication of cell phone text messages can be problematic where the authorship of the messages is uncertain. *See Commonwealth v. Koch*, 103 A.3d 705 (Pa. 2014). However, where, as here, authorship of the messages is admitted, authentication may be established by traditional evidentiary means. The Rules provide, in relevant part:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
> (b) Examples. The following are examples only--not a complete list--of evidence that satisfies the requirement:
> (1) <u>Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be</u>.
> ...

Pa.R.E. 901 (emphasis added).

As previously noted, Mr. Robinson was a reluctant and uncooperative witness. When confronted with the text messages copied from his cell phone, he equivocated as to whether he was the author. However, he did admit to authoring the text messages sent to a woman, known as "Ride," wherein he discussed being the target of the shooting.[2] Though he repudiated the veracity of the statement made in the text

---

[2] Mr. Robinson had the following exchange with the District Attorney:

Q I'm showing you what's been marked as Commonwealth's Exhibits No. 12 and 13 which are copies of texts taken from your phone. It says here, They just tried to kill me, lol. Yoo s-t-f-u were you with Jayonna? She walked past me and them niggas shot in my direction and hit her. That's so crazy. Who was it? You didn't get hit at all? Nah, I ain't get hit. They shot a lot of times, but I ain't get hit. My feet was fast, lol. Yo, that's crazy. Glad you're okay. Hope Jay is too. Yeah, I'm good. I talked to her mom. I see her when I can. She's gonna be okay? She's in surgery.

A Yeah, I was trying to -- that was what -- you see why I put that, that, that, that caption. I mean, that's a female.

messages, he did admit to being the messages' author. Accordingly, Mr. Robinson's testimony as a witness with knowledge satisfied any authentication requirement.

Further, any hearsay concerns are also allayed as Mr. Robinson was personally confronted with the statements in court before the jury. Thus, the Defendant had the opportunity to challenge the truth of the matter asserted in those messages by cross examining Mr. Robinson. Indeed, defense counsel attempted to confront those texts, but, given Mr. Robinson's machismo-laced bravado, counsel's efforts were ill-fated from the start.

For these reasons, the court submits it did not err in admitting the text messages into evidence.

## D. Transferred Intent

Defendant argues that the court erred by instructing the jury on transferred intent where no killing occurred and where the court substantially altered the standard jury instruction. In this case, the issue of transferred intent arose to establish the element of intent for Aggravated Assault (Causing Bodily Injury with a Deadly Weapon) as to Jayonna Pope, because she was an unintended victim of the Defendant's attempt to murder Stephen Robinson.

---

Q Ride?

A Yeah, Ride, that's a female. At that time I was in a relationship with somebody. So, yeah, I was trying to make it seem like I was the one who got shot at, like little points with that female because, you know, she likes things like that. She likes bad guys. So, maybe she would look at me like, oh, this is a bad guy, maybe I get the buns or something like that, no disrespect, or something like that. So, that's why. I mean, but that doesn't mean that was the truth. Yeah, I told that female a lot of lies.

THE COURT: I'm sorry, you said you told that female a lot of lies?

THE WITNESS: I told her a lot of lies because I was in a relationship.

N.T., 1/27/2015 at 194-95.

-13-

The standard jury instruction relating to transferred intent reads:

> The Commonwealth has alleged that while the defendant[s] [intended to kill] [conspired with the intent to kill] [name of intended victim], [he] [she] [they] actually caused the death of [name of deceased].
>
> If you find beyond a reasonable doubt that the defendant[s] [intended to kill] [conspired with the intent to kill] [name of intended victim] and [was] [were] acting with that intent at the time [he] [she] [they] in fact killed [name of deceased], you may find the defendant[s] acted with the specific intent to kill under what the law calls the doctrine of transferred intent.
>
> What this means is that if the actual result the defendant[s] intended differs from what [he] [she] [they] contemplated only because a different person than the one actually intended was killed, the element of causing the death with specific intent to kill is still established.

Pennsylvania Standard Jury Instruction 15.2501C.1.

Though the standard jury instruction contemplates a killing, the transferred intent

doctrine, as codified in our criminal code, contains no such requirement. The code

provides:

> When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:
>
> (1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or
>
> (2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S. § 303(b) (emphasis added).

-14-

Per the statute, a killing is not required.[3] Here, the injury or harm to Ms. Pope

was established based on the gunshot wound to her head and thus the application of

the transferred intent doctrine was appropriate.

As to the jury instruction, the standard jury instructions are obviously drafted so

as to accommodate modification for the purpose of tailoring them to the specific facts of

a given case. Here the court instructed the jury as follows:

> The Commonwealth has alleged that while the defendant intended to kill Stephen Robinson, he actually caused injury to Jayonna Pope.
> If you find beyond a reasonable doubt that the defendant intended to kill Stephen Robinson and was acting with that intent at the time he injured Jayonna Pope, you may find the defendant acted with the specific intent to kill under what the law calls the doctrine of transferred intent.
> What this means is that if the actual result the defendant intended differs from what he contemplated only because a different person than the one actually intended was injured, the element of specific intent to kill is still established regarding the attempted murder charge. Similarly, the intent to inflict serious bodily injury would still be established with regard to the first aggravated assault count, and the intent to cause bodily injury with a weapon would still be established regarding the second aggravated assault count.
> In essence, the intent to cause injury or to kill one individual may be transferred to the actual victim. As with the case of determining accomplice liability, as I explained you had to determine that with respect to each of the offenses individually, your determination to apply this doctrine, the doctrine of transferred intent, must be made separately for each offense.
> In other words, you must make a separate determination regarding the application of the doctrine to attempted murder, aggravated assault (attempted serious bodily injury)

---

[3] In at least two Pennsylvania appellate cases, the transferred intent rule was applied to aggravated assault cases predicated on an attempt to cause an injury even though no injury had occurred. See *Commonwealth v. Jackson*, 955 A.2d 441 (Pa. Super. 2008) (applying the doctrine to establish the intent to cause serious bodily injury to a group of unintended victims even though no one suffered physical injuries as a result of a shooting). Clearly, the occurrence of a killing is not a prerequisite to the application of the transferred intent doctrine in Pennsylvania. See also *Commonwealth v. Thompson*, 739 A.2d 1023, 1029-30 (Pa. 1999).

and aggravated assault (causing bodily injury with a deadly weapon).

N.T., 1/28/2015 at 441-43.

The court respectfully submits that this jury instruction was an accurate statement of Pennsylvania law and presents no basis for reversal.

### E. Length of Sentence

The Defendant contends that the court abused its discretion by imposing a sentence that was unreasonable and excessive under the circumstances of the case. We first note that at the original sentencing date, the court erroneously applied an illegally lengthy sentence which was the result of a calculation error arising from the Commonwealth's failure to present the issue of serious bodily injury to the jury as to Count I, Criminal Attempt – Criminal Homicide. The court subsequently resentenced the Defendant to an aggregate sentence of 12 ½ to 25 years. That sentence reflected consecutive sentences for Criminal Attempt – Criminal Homicide, 10-20 years; Aggravated Assault (Jayonna Pope), 1-2 years; Firearms not to be possessed without a license, 1-2 years; and, Recklessly Endangering Another Person (Ashley Brown), 6-12 months.

The Defendant's crime was shocking. He opened fire with a deadly weapon during daylight hours on a populated downtown street in an attempt to kill Stephen Robinson. He wounded two innocent bystanders, one of whom he shot in the head. Per eyewitness testimony, he laughed as he fled the scene of his crime. His three victims each deserved to have their rights vindicated by the imposition of consecutive sentences and nothing less than the lengthy sentence the court imposed would do justice to the gravity of the Defendant's crimes. The court was in receipt of letters of

support from the Defendant's family, but nothing therein can mitigate the gravity of the Defendant's actions. His sentence is appropriate.

## F. Merger

Finally, the Defendant argues the court erred by failing to merge Aggravated Assault (Causing Bodily Injury with a Deadly Weapon) (Jayonna Pope) with Attempted Murder. This claim of error is simply factually erroneous. The Defendant was not convicted of the attempted murder of Jayonna Pope. He was convicted of the attempted murder of Stephen Robinson and the Defendant's corresponding aggravated assault conviction relating to Mr. Robinson was properly merged for sentencing purposes. This issue presents no basis for reversal.

## III. Conclusion

In sum, despite two of the victims in this case acting as problematic witnesses, multiple other eyewitnesses and objective text and video evidence were found credible by the jury and resulted in appropriate guilty verdicts. The court respectfully submits that the verdicts and judgment of sentence be affirmed.

By the Court,

Albert H. Masland, J.

Matthew P. Smith, Esquire
Assistant District Attorney

Jacob M. Jividen, Esquire
For Defendant

-17-