J-S45022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
        v.                    :
                              :
                              :
DAN DAVID HERNANDEZ JR.       :
                              :
        Appellant             :   No. 1175 EDA 2019

Appeal from the PCRA Order Entered April 10, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-1021-2016

BEFORE:  BENDER, P.J.E., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 28, 2019**

Dan David Hernandez Jr. (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

A prior panel of this Court summarized the facts of this case as follows:

In April 2013, [Appellant] took a vehicle, which had been involved in an accident, to Kinte King's ("King") auto repair shop located in Bethlehem, Pennsylvania.  On April 22, 2013, [Appellant] went to the shop to discuss the estimate for the repairs with King.  [Appellant] contested King's request for $300 for parts, and the two engaged in a verbal argument, which escalated into a physical altercation.  [Appellant] eventually left the shop and called his uncle, Angelo Lopez ("Lopez"), about the confrontation.  Thereafter, [Appellant], who brought a firearm, and Lopez returned to King's shop.  Lopez instructed [Appellant] to remain in the vehicle while he spoke with King.  However, [Appellant] ignored Lopez's instruction, approached King, and shot him six times, including in the chest, back, and groin.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] fled the scene, and was not apprehended until two years later in New Jersey.

***Commonwealth v. Hernandez***, 69 EDA 2017 at 1-2 (Pa. Super. Jan. 18, 2018) (unpublished memorandum).

The PCRA court provided the following procedural history:

On July 7, 2016, following a jury trial, [Appellant] was convicted of attempted murder, aggravated assault, firearms not to be carried without a license, possession of an instrument of crime, and recklessly endangering another person. On November 21, 2016, [Appellant] was sentenced to eighteen (18) to thirty-six (36) years on the attempted murder charge, with the sentences on the remaining charges to run concurrently. [Appellant] filed a timely post-sentence motion, which was denied by this Court, followed by a direct appeal to the Superior Court, which ultimately affirmed the judgment of sentence in a memorandum opinion dated January 18, 2018. . . .

[Appellant] filed the instant PCRA [petition] on August 13, 2018. [PCRA Counsel] was appointed to represent [Appellant]. A second amended PCRA [p]etition was filed by [PCRA Counsel], and PCRA hearings were held on December 14, 2018 and February 1, 2019. [Appellant raised the following issues]: that counsel was ineffective for (a) failing to request an imperfect self-defense instruction at trial; (b) failing to move for judgment of acquittal at trial or pursue a sufficiency of the evidence claim on appeal regarding the firearms charge; (c) failing to object at trial to the [c]ourt's definition of "firearm" in charging the jury; (d) failing to raise a weight of the evidence claim in post-sentence motions; (e) failing to object at trial to the jury charge regarding [Appellant]'s duty to retreat; and (f) failing to request the "corrupt and polluted source" jury charge. [Appellant] further assert[ed] that his sentence for aggravated assault is illegal because it should have merged with the sentence for attempted murder. . . .

PCRA Court Opinion, 4/10/19, at 1-2.

On April 10, 2019, the PCRA court dismissed Appellant's PCRA petition. This timely appeal followed. Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues for review:

A. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for failing to request an imperfect defense of others instruction?

B. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for failing to move for judgment of acquittal on the charge of firearms not be carried without a license, 18 Pa.C.S.A. § 6106, and did the [PCRA court] err in failing to find [Appellate Counsel] ineffective for failing to pursue a sufficiency of the evidence challenge to that conviction on appeal?

C. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for agreeing to and not objecting to the [t]rial [c]ourt, in its jury instructions, defining a "firearm" in terms of a semiautomatic .40 caliber handgun as opposed to utilizing the standard jury instruction set forth in PA-JICRIM 15.6106, Pa. SSJI (Crim), § 15.6106 (2016)?

D. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for failing to raise a weight of the evidence claim as to all convictions in post-sentence motions, thus waiving the issue on appeal?

E. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for failing to object to that part of the jury instruction regarding Appellant's duty to retreat on the ground that Appellant did not have a duty to retreat pursuant to 18 Pa.C.S.A. § 506(b)?

F. Did the [PCRA court] err in failing to find that [Trial Counsel] was ineffective for failing to request the jury instruction that Appellant's uncle was a corrupt and polluted source?

G. Is Appellant's sentence for aggravated assault illegal because it merges with his sentence for attempted murder?

- 3 -

Appellant's Brief at 5-6.

We note that we review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

Appellant's first six issues involve allegations of ineffective assistance of counsel. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. *Bomar*, 104 A.3d at 1188.

For his first issue, Appellant argues that Trial Counsel was ineffective for failing "to request an imperfect self-defense of others instruction that, if believed by the jury, would have reduced his attempted murder conviction to attempted voluntary manslaughter, a lesser offense." Appellant's Brief at 20. Appellant asserts that because the trial court gave the jury a defense of others instruction, there was no reason for Trial Counsel not to request an imperfect defense of others instruction.

The Pennsylvania Crimes Code defines "Unreasonable belief killing justifiable[,]" or imperfect self-defense, as follows:

> **(b) Unreasonable belief killing justifiable.--**A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S.A. § 2503(b). As this Court has explained, the primary difference between imperfect self-defense and self-defense is the reasonableness of the belief that the use of deadly force was necessary:

> A defense of "imperfect self-defense" exists where the defendant actually, but unreasonably, believed that deadly force was necessary. 18 Pa.C.S.A. § 2503(b); **Commonwealth v. Marks**, 704 A.2d 1095, 1100 (Pa. Super. 1997)[.] However, all other principles of self-defense must still be met in order to establish this defense. **Commonwealth v. Broaster**, 863 A.2d 588, 596 (Pa. Super. 2004). The requirements of self-defense are statutory: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself [or another] against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). If "the defender did not reasonably believe deadly force was necessary[,] he provoked

the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable." ***Commonwealth v. Fowlin***, [] 710 A.2d 1130, 1134 ([Pa.] 1998).  A successful claim of imperfect self-defense reduces murder to voluntary manslaughter. ***Commonwealth v. Tilley***, [] 595 A.2d 575, 582 ([Pa.] 1991).

***Commonwealth v. Truong***, 36 A.3d 592, 599 (Pa. Super. 2012) (*en banc*).

At trial, Appellant testified on his own behalf and asserted that his shooting of King was justified based on a defense of others theory.  When Appellant raised his defense of others claim on appeal, a prior panel of this Court rejected it, explaining:

> [Appellant] testified at trial that following his verbal and physical altercation with King, he left the auto shop and called Lopez.  N.T., 7/6/16, at 65-82; ***see also id.*** at 70-71, 76-79 (wherein [Appellant] stated that during the initial encounter, King grabbed a knife and threatened to kill [Appellant]; King punched [Appellant] in the face; and King choked [Appellant]).  [Appellant] stated that when he and Lopez returned to the auto shop, Lopez told [Appellant] to stay in the vehicle while he talked to King.  ***Id.*** at 89; ***see also id.*** at 85-87 (wherein [Appellant] testified that he brought his firearm upon returning to King's shop).  [Appellant] indicated that Lopez and King exchanged words, and that King's body language was extremely aggressive.  ***Id.*** at 90.  [Appellant] testified that he exited the vehicle and walked toward King and Lopez.  ***Id.*** at 92; ***see also id.*** (wherein [Appellant] stated that he told a woman in a vehicle close to the shop that "something bad was going to happen.").  [Appellant] observed Lopez and King exchange punches, and then saw King reach for a weapon from his waist area.  ***Id.*** at 92-94; ***see also id.*** at 94 (noting that [Appellant] did not see a firearm).  [Appellant] indicated he was scared and worried about what would happen to Lopez, and as a result, pulled out his firearm and fired multiple shots at King.  ***Id.*** at 94-97, 101-02.  [Appellant] stated that he did not intend to take King's life.  ***Id.*** at 96.
>
> The fact-finder found [Appellant]'s testimony to be unbelievable.  ***See*** Trial Court Opinion, 4/17/17, at 4; ***see also Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa. Super. 2014)

(stating that "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim."). The Commonwealth cannot sustain its burden of proof by relying "on the [fact finder's] disbelief of the defendant's testimony . . . . If there are other witnesses, however, who provide accounts of material facts, it is up to the [fact-finder] to reject or accept all, part or none of the testimony of any witness." *Smith*, 97 A.3d at 788 (internal quotations omitted).

King testified that he and [Appellant] were involved in a fight over the payment for work on a vehicle. N.T., 7/5/16, at 125-26, 128-29, 131-32; *see also id.* at 155-59 (wherein King stated that he struck [Appellant] several times during the fight, and choked him). King stated that [Appellant] then left the shop, and later returned with Lopez. *Id.* at 132, 135, 137. King testified that Lopez exited his vehicle, approached King, and attempted to punch King in the face. [*Id.*] at 138, 140; *see also id.* at 184-85, 188 (wherein an eyewitness to the shooting, Kelsey Wrecsics ("Wrecsics"), testified that Lopez walked up to King and punched him in the mouth, and that [Appellant] was walking toward Lopez and King at this time); 219 (wherein an eyewitness to the shooting, Takala Atwood ("Atwood"), stated that Lopez approached King and punched him in the face). King then heard someone yell gun, and King turned and attempted to run away from the scene. *Id.* at 138. Wrecsics and Atwood each testified that prior to the shooting, [Appellant] approached them and stated that "if you don't want to see anything crazy, leave now." *Id.* at 183, 220, 221. Wrecsics and Atwood stated that [Appellant] then started shooting at King. *Id.* at 185, 221, 22-23 Following the shooting, [Appellant] told Wrecsics "I told you so." *Id.* at 191. As a result of the shooting, King suffered six gunshot wounds, including to the chest, back, and groin. N.T., 7/6/16, at 5-6.

Here, the credible evidence establishes that Lopez punched King upon approaching him, and, after hearing that someone had a firearm, King turned and attempted to flee the scene. Further, [Appellant] made comments to eyewitnesses both before and after the shooting. Thus, viewed in a light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence for the fact-finder to find, beyond a reasonable doubt, that [Appellant] was not acting in defense of others when

he shot King. **See Smith**, 97 A.3d at 788 (stating that the fact-finder was free to believe all, part or none of the evidence presented at trial, and to reject the testimony of those witnesses it determined were not credible).

**Hernandez**, 69 EDA 2017 at 6-9 (footnotes omitted).

Therefore, as this Court previously explained, the testimony at trial credited by the jury indicates that Appellant and Lopez were the aggressors of the altercation and Appellant did not act in defense of Lopez when he shot King. **See** N.T., 7/5/16, at 125-38, 183-85, 219-21. Thus, there is no record support for Appellant's assertion that he would have prevailed on an imperfect self-defense theory at trial. **See Truong**, 36 A.3d at 599. Indeed, on direct appeal, this Court noted that "because Hernandez did not meet the requirements of defense of others, he failed to establish the defense of imperfect self-defense." **Hernandez**, 69 EDA 2017 at 9 n.3. Because the record does not support Appellant's assertion that the outcome of the case would have been different had Trial Counsel requested an imperfect self-defense jury instruction, Appellant was not prejudiced by Trial Counsel's failure to do so. **See Bomar**, 104 A.3d at 1188; **King**, 57 A.3d At 613. Accordingly, Appellant's first issue is meritless.

For his second issue, Appellant argues that Trial Counsel was ineffective because he failed to move for a judgment of acquittal on the charge of firearms not to be carried without a license, and Appellate Counsel was ineffective for not raising a sufficiency of the evidence claim for that conviction. Appellant contends that the Commonwealth failed to prove that the gun Appellant used

- 8 -

to shoot King was a "firearm" as defined by Section 6102 of the Crimes Code, because the Commonwealth offered no evidence relating "to the length of the barrel of the gun or to the overall length of the gun." ***Id.***

Pertinent to this ineffective assistance of counsel claim, we acknowledge the standard of review for challenges to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citations omitted). "As the ultimate finder of fact, the jury [is] free to believe some, all, or none of the Commonwealth's evidence. The jury [is also] free to resolve any inconsistencies or discrepancies in the testimony in either party's favor." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1078 (Pa. 2017).

Appellant was convicted of firearms not to be carried without a license under Section 6106(a)(1) of the Pennsylvania Crimes Code. Section 6106 provides, in relevant part, as follows:

**(a) Offense defined.--**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1). Section 6102 defines a "firearm" as:

Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S.A. § 6102.

In support of his claim, Appellant relies on this Court's decision in *Commonwealth v. West*, 482 A.2d 1339 (Pa. Super. 1984), which described the length of the weapon's barrel as an "indispensable element of the charged offense without proof of which a conviction may not be sustained." *Id.* at 1341 (quotations and citation omitted). In *West*, the police did not recover the weapon, and thus, there was no weapon admitted into evidence at trial. *Id.* at 1342. The only reference to the weapon was made by a witness who described it as a "toy." *Id.* Consequently, we determined that the evidence

was insufficient to sustain a conviction under Section 6106, and counsel was ineffective for not pursuing the issue on appeal. *Id.*

Appellant is correct that the Commonwealth did not establish the exact length of the barrel at trial. We nevertheless find this case distinguishable from *West*, as numerous witnesses consistently described the gun Appellant used to shoot King as a small gun or handgun. *See* N.T., 7/5/16, at 183, 186, 222. Appellant, by his own testimony, stated that he used a "black firearm" or "handgun" that he carried in his waistband to shoot King. N.T., 7/6/16, at 85-86, 116, 121, 129. Additionally, Detective Nicholas Lechman, who investigated the shooting, and Andrew Kehm, the Detective Sergeant Supervisor of the Bethlehem City Forensic Services Unit, each identified the shell casings recovered from the scene as casings from a .40 caliber Smith and Wesson handgun. N.T., 7/5/16, at 106-07, 7/6/16, at 22-23.

As noted, we view the evidence in the light most favorable to the Commonwealth as verdict winner. *Sebolka*, 205 A.3d at 336-37. Upon review, we conclude that Appellant's description of the handgun he used to shoot King, read in conjunction with the testimony of the other witnesses who described Appellant's gun, allowed the jury to reasonably conclude that the length of the barrel was less than fifteen inches. *See* 18 Pa.C.S.A. § 6102. Thus, there was sufficient evidence to sustain Appellant's firearms not to be carried without a license conviction, and Appellant was not prejudiced by Trial Counsel's failure to raise the issue in a motion for judgment of acquittal or

J-S45022-19

Appellate Counsel's failure to raise the issue on direct appeal. *See Bomar*, 104 A.3d at 1188; *King*, 57 A.3d At 613. Appellant's second issue is meritless.

For his third issue, Appellant argues that Trial Counsel was ineffective for not objecting to the trial court's jury instruction defining the term firearm. Specifically, Appellant takes issue with the trial court defining a firearm as "any semiautomatic .40 caliber handgun" because that definition is inconsistent with the Pennsylvania Suggested Standard Criminal Jury Instruction definition. Appellant's Brief at 38-39 (quoting N.T., 7/6/16, at 224). Appellant asserts that Trial Counsel should have requested the trial court use the suggested standard instruction for the offense of firearms not to be carried without a license because it tracks the language defining a firearm in Section 6102 of the Pennsylvania Crimes Code.[1]

At Appellant's PCRA hearing, Trial Counsel offered the following explanation for why he did not object to the trial court's definition of firearm:

> I make decisions based on what my defense is that I'm trying to pursue on behalf of my client. And -- and, you know, I think about things like the charge being too long, the length of the charge, the jury getting confused, the jury losing focus on what the main issue in the case is. All of these things go into my strategic decision with respect to instructions as they did in this case.

---

[1] Appellant contends Trial Counsel should have requested the following instruction: "A 'firearm' is any [pistol or revolver with a barrel less than 15 inches] [shotgun with a barrel less than 18 inches] [rifle with a barrel less than 16 inches] [or] [any pistol, revolver, rifle, or shotgun with an overall length of less than 26 inches]." Appellant's Brief at 39 (quoting Pa. S.S.J.I. (Crim) § 15.6106 (2016)).

- 12 -

And in this case, the focus was self-defense. I thought he had a viable -- or self-defense of others I should say. I thought he had a viable, solid defense in that regard, a winnable defense, in part because the victim in this case, based on my recollection, had a significant history of violent behavior, prior assaultive conduct.

And I do believe that I argued, and, in fact, requested a specific instruction on that point with [the trial court], that the Commonwealth initially objected to until I presented some case law that allowed the prior criminal record of this victim to come into the case.

So the short answer is I was trying to focus in on really the gist of the defense. So in terms of some of these other issues that you raised, sure, you know, you can say well, there's not a downside for asking for this or that, but I don't make decisions based on that. I make decisions based on what do I think is -- are the most important instructions to advance the cause of the [d]efendant without the jury being distracted unnecessarily.

N.T., 12/14/18, at 29-30.

The record reflects that Trial Counsel did not object to the trial court's definition of firearm in its instructions to the jury because he did not want to distract the jury from Appellant's primary defense theory (defense of others) by quibbling over an issue that would have little impact. *See id.* Trial Counsel further emphasized that he believed the record supported the conclusion that Appellant was in possession of a handgun that met the definition of a firearm under Section 6102. *Id.* at 37; *see also supra*, p. 11-12. Therefore, we conclude that Trial Counsel offered a reasonable strategic basis for not objecting to the trial court's definition of a firearm and the PCRA court did not abuse its discretion in rejecting this claim. *See Bomar*, 104 A.3d at 1188. Accordingly, Appellant's third issue is meritless.

For his fourth issue, Appellant argues that Trial Counsel was ineffective for failing challenge the weight of the evidence with respect to each of his convictions. In particular, Appellant contends that "the evidence overwhelmingly demonstrates that he shot King in defense of Lopez." Appellant's Brief at 42.

Regarding weight of the evidence claims, we have stated:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000); *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the

- 14 -

lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 744 A.2d at 753.

**Sebolka**, 205 A.3d at 340-41 (citations modified).

In rejecting Appellant's ineffectiveness claim relating to Trial Counsel's decision not to pursue a weight of the evidence claim, the PCRA court explained:

Here, the jury clearly rejected [Appellant]'s view that he shot King while acting in defense of Lopez, and that verdict is not outweighed by [Appellant]'s self-serving testimony to the contrary. As noted above, [Appellant] returned to the scene of the prior altercation armed with a gun, bystanders testified that [Appellant] advised them to leave just prior to the shooting and further testified that [Appellant] was already approaching the victim before the altercation between King and Lopez began, and lastly, King was shot repeatedly even as he tried to flee. The jury's verdict cannot be considered shocking in light of the evidence presented. [Trial Counsel] similarly believed that a weight of the evidence challenge would be frivolous and would dilute the more meritorious issues raised in his motion. N.T.[,] 12/14/1[8,] at 31-34. Consequently, [Appellant] has not sustained his burden of demonstrating that [Trial Counsel] was ineffective for failing to raise a weight of the evidence challenge.

PCRA Court Opinion, 4/10/19, at 5-6.

Having reviewed Appellant's brief, the record, and prevailing law, we conclude that the PCRA court did not abuse its discretion in determining that Appellant did not have a meritorious weight of the evidence claim. The PCRA court's analysis of this issue accurately summarizes the testimony of the witnesses who testified at trial, several of whom explicitly stated that they observed both Appellant and Lopez act as the aggressors when they returned

to the scene of Appellant's prior altercation with King. Additionally, the PCRA court's analysis and review of the pertinent testimony is consistent with our discussion of Appellant's convictions set forth above. In sum, Appellant's weight claim seeks the reweighing of the evidence indicating that Appellant shot King with a handgun and that he did not do so in defense of Lopez. Were we to reweigh the evidence in Appellant's favor, it would violate our standard of review for weight of the evidence claims. *See Sebolka*, 205 A.3d at 340-41. Accordingly, we conclude that Appellant's fourth issue is meritless, as Appellant was not prejudiced by Trial Counsel's failure to raise a weight claim. *See Bomar*, 104 A.3d at 1188.

For his fifth issue, Appellant argues that Trial Counsel was ineffective for failing to object to the trial court's jury instructions relating to the duty to retreat. Appellant contends that Trial Counsel should have objected to this instruction because it erroneously "suggested to the jury that if the Commonwealth proved *either* that [Appellant] could have retreated *or* have caused Lopez to have retreated, then the Commonwealth would have disproved the justification defense[.]"[2] Appellant's Brief at 47 (emphasis in original).

_____

[2] The trial court instructed the jury:

> The Commonwealth has to prove that [Appellant] knew he could avoid the necessity of using deadly force with complete safety and

Section 506 of the Crimes Code governs the use of force for the protection of others and the duty to retreat, and provides:

**(a) General rule.--**The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

**(b) Exception.--**Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S.A. § 506.

Additionally,

[A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense or defense of others it must be shown that: a) the slayer or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself or the other therefrom; and c) the slayer or the other he seeks to protect did not violate any duty to retreat or to avoid the danger.

---

could have retreated from himself or caused the other person to retreat and failed to do so.

N.T., 7/6/16, at 230-31.

- 17 -

***Commonwealth v. Hornberger***, 74 A.3d 279, 284-85 (Pa. Super. 2013) (citation, emphasis, and brackets omitted).

When a defendant raises the issue of self-defense or defense of others, "the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001). Importantly,

> "The Commonwealth sustains its burden [of disproving self-defense or defense of others] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he or another] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [himself or another] therefrom; or that the slayer violated a duty to retreat or avoid the danger."

***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1124 (Pa. 2012).

We conclude that Appellant was not prejudiced by Trial Counsel's failure to object to the Trial Court's instruction regarding the duty to retreat. As established above, the Commonwealth sufficiently proved that Appellant did not act in defense of Lopez because Appellant was not free from fault in provoking and continuing the altercation with King that resulted in King's shooting or that Lopez was in imminent danger of death or great bodily harm. ***See Sepulveda***, 55 A.3d at 1124; ***see supra***, p. 6-8. Consequently, Appellant's defense of others theory was unsuccessful. Whether the trial court properly instructed the jury regarding the duty to retreat was immaterial, and Appellant was not prejudiced by Trial Counsel's decision not to challenge the

instruction. Accordingly, the trial court did not abuse its discretion in rejecting this ineffective assistance of counsel claim. *See Bomar*, 104 A.3d at 1188.

For his sixth issue, Appellant argues Trial Counsel was ineffective for failing to request that the trial court instruct the jury that Lopez was a corrupt and polluted source. Appellant maintains he was entitled to a corrupt and polluted source instruction because Lopez was an accomplice to Appellant's crimes.

With respect to the necessity of a corrupt and polluted source instruction, this Court has stated:

> It is the rule in Pennsylvania that the testimony of an accomplice of a defendant, given at the latter's trial, comes from a corrupt source and is to be carefully scrutinized and accepted with caution; it is clear error for the trial judge to refuse to give a charge to this effect after being specifically requested to do so. The justification for the instruction is that an accomplice witness will inculpate others out of a reasonable expectation of leniency. An accomplice charge is necessitated not only when the evidence requires an inference that the witness was an accomplice, but also when it permits that inference. Thus, if the evidence is sufficient to present a jury question with respect to whether the prosecution's witness was an accomplice, the defendant is entitled to an instruction as to the weight to be given to that witness's testimony. **Where, however, there is no evidence that would permit the jury to infer that a Commonwealth witness was an accomplice, the court may conclude as a matter of law that he was not an accomplice and may refuse to give the charge.** This is so because a trial court is not obliged to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial.

*Commonwealth v. Hall*, 867 A.2d 619, 630 (Pa. Super. 2005) (emphasis added, quotations and citation omitted).

We have defined "an 'accomplice' [a]s an individual who knowingly and voluntarily cooperates with or aids another in the commission of a crime. Thus, and in following with the prior statement, a showing of mere presence at the scene of a crime is insufficient to support a conviction: evidence indicating participation in the crime is required." *Id.* (quotation and citations omitted).

In rejecting this claim, the PCRA court explained:

Requesting this charge would have obliterated [Appellant]'s justification defense, under which he asserted that he and Lopez returned to King's garage with no nefarious purpose and that [Appellant] only acted to protect Lopez from imminent harm by King. The "corrupt and polluted source" instruction would clearly imply that [Appellant] and Lopez agreed to commit a crime together when they decided to return to confront King. [Trial Counsel] acted reasonably and in [Appellant]'s interest by not requesting this charge be given to the jury.

PCRA Court Opinion, 4/10/19, at 8.

Upon review of the record and relevant case law, we conclude that the PCRA court did not abuse its discretion in determining that Appellant was not prejudiced by Trial Counsel's failure to request a corrupt and polluted source instruction. We agree with the trial court's assessment that had Trial Counsel requested the instruction, he would have been asking the jury to view Lopez as Appellant's accomplice instead of the person Appellant claimed he was defending. *See id.* Moreover, both Appellant and Lopez testified that Lopez was unaware Appellant had brought a handgun with him when they returned to King's automobile repair shop. N.T., 7/5/18, at 263-64, 277-78; N.T.,

7/6/16, at 121; *see also* N.T., 12/14/18, at 38. The record further reflects that Lopez instructed Appellant to stay in the car while Lopez discussed Appellant's repair payment with King. N.T., 7/5/18, at 254; N.T., 7/6/18, at 89, 126-27. Thus, the evidence supporting the assertion that Lopez was Appellant's accomplice in shooting King was tenuous at best. *See Hall*, 867 A.2d at 630. Accordingly, the PCRA court did not err in determining that Trial Counsel was not ineffective in relation to this claim. *See Bomar*, 104 A.3d at 1188.

Finally, for his last issue, Appellant challenges the legality of his sentence. Appellant argues that his aggravated assault conviction should have merged with his conviction of attempted murder.

Regarding merger, this Court has stated:

The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, a merger analysis is not required. If, however, the event constitutes a single criminal act, a court must then determine whether or not the two convictions should merge. In order for two convictions to merge: (1) the crimes must be greater and lesser-included offenses; and (2) the crimes charged must be based on the same facts. If the crimes are greater and lesser-included offenses and are based on the same facts, the court should merge the convictions for sentencing; if either prong is not met, however, merger is inappropriate.

*Commonwealth v. Shank*, 883 A.2d 658, 670 (Pa. Super. 2005) (quoting *Commonwealth v. Gatling*, 807 A.2d 890, 899 (Pa. 2002) (Opinion Announcing the Judgment of Court)).

With respect to greater and lesser-included offenses, we have further explained:

> To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. **Commonwealth v. Anderson**, 650 A.2d 20, 24 (Pa. 1994). If both crimes require proof of at least one element that the other does not, then the sentences do not merge. **Id.**

**Commonwealth v. Johnson**, 874 A.2d 66, 70–71 (Pa. Super. 2005).

"Attempted murder is defined by reading the attempt statute, 18 Pa.C.S.A. § 901(a), in conjunction with the murder statute, 18 Pa.C.S.A. § 2502(a) (murder of the first degree). Accordingly, the elements of attempted murder are (1) the taking of a substantial step, (2) towards an intentional killing. See 18 Pa.C.S.A. §§ 901(1), 2502(a)." **Johnson**, 874 A.2d at 71. Here, Appellant was convicted of aggravated assault. Under Section 2702(a)(4), "[a] person is guilty of aggravated assault if he attempts to cause or intentionally or knowingly causes bodily injury to another **with a deadly weapon**." 18 Pa.C.S.A. § 2702(a)(4) (emphasis added). Thus, not all of the elements of aggravated assault – causing bodily injury with a deadly weapon – are included in the statutory elements of attempted murder. Critically, Section 2702(a)(4) requires the use of a deadly weapon, whereas the elements of attempted murder do not. **Compare** 18 Pa.C.S.A. §§ 901(a), 2502(a) **with** 18 Pa.C.S.A. § 2702(a)(4). Therefore, the crime of aggravated assault under Section 2702(a)(4), which requires causing bodily injury with a

deadly weapon, is not a lesser-included offense of attempted murder. The trial court did not err in declining to merge these charges.

For all of the above reasons, the PCRA court did not abuse its discretion in dismissing Appellant's petition seeking collateral relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/19